IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

Nos. 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113, 08-75130, 08-75132, 08-75133, 08-75161, 08-75165
_____

ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, *et al.*,

Petitioners,

v.

BONNEVILLE POWER ADMINISTRATION,

Respondent.
_____

RESPONDENT BONNEVILLE POWER ADMINISTRATION'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
_____

**INTRODUCTION**

In 2008, the Bonneville Power Administration ("BPA") conducted a formal ratemaking hearing ("WP-07 Supplemental Rate Case") pursuant to section 7(i) of the Northwest Power Act ("NWPA") in order to comprehensively respond to this Court's remand of BPA's FY 2002-2006 power rates and related decisions. 16 U.S.C. § 839e(i). BPA issued a Final Record of Decision ("WP-07 Supplemental ROD") at the conclusion of the hearing on September 22, 2008. The ROD concluded that BPA would respond to the Court's decisions through: the determination of a refund amount for BPA's preference customers; providing the

1

refund through reductions in prospective Residential Exchange Program ("REP") benefits; and revising BPA's power rates for the one remaining year of the current 3-year rate period in order to prospectively correct the cost allocation error identified by the Court.

On September 29, 2008, BPA filed its revised FY 2009 power rates, as well as the ROD and the remainder of the administrative record, with the Federal Energy Regulatory Commission ("FERC") for confirmation and approval. On July 16, 2009, FERC granted final confirmation and approval to BPA's WP-07 power rates. *U.S. Dep't of Energy, Bonneville Power Admin.*, 128 FERC ¶ 61,058 (2009). The NWPA provides that challenges to BPA's rate determinations must await FERC's final confirmation and approval. 16 U.S.C. § 839f(e)(4)(D). The instant consolidated petitions, filed within 90 days of September 22, 2008 (well *before* FERC's final approval), prematurely challenged a limited number of issues decided in the WP-07 Supplemental ROD.

The consolidated petitions fall into two camps. Some petitioners believe that certain issues addressed in the WP-07 Supplemental ROD can be separated from other issues and reviewed prior to FERC's confirmation and approval of BPA's FY 2009 power rates. Other petitioners have filed their petitions as a precautionary measure, believing this Court lacks jurisdiction to review any decision in the ROD until FERC grants final confirmation and approval of BPA's proposed rates. BPA

2

agrees with the latter petitioners and hereby moves to dismiss the consolidated petitions for lack of jurisdiction.

As discussed below, NWPA section 9(e)(4)(D) provides that "rate determinations pursuant to section 7 [of the Act] shall be deemed final upon confirmation and approval by the Federal Energy Regulatory Commission."  16 U.S.C. § 839e(4)(D); *Central Lincoln People's Utility District v. Johnson*, 735 F. 2d 1101, 1109 (9th Cir. 1984).  By requiring all petitions challenging ratemaking determinations to be filed after FERC's confirmation and approval, the NWPA and this Court have provided that all rate case issues decided in the same hearing will be reviewed at the same time by this Court, thereby avoiding the inefficient bifurcation of judicial review of agency action and avoiding the possibility of inconsistent decisions.

If the instant consolidated cases are dismissed, petitioners will not be deprived of judicial review.  Such review would occur, however, only pursuant to petitions for review filed *after* FERC's confirmation and approval of BPA's rates. These petitions are currently pending before the Court in *Avista Corp. et al. v. Bonneville Power Admin.*, Nos. 09-73160 *et al.*  BPA respectfully moves the Court to dismiss the consolidated petitions for the reasons stated below.

3

## BACKGROUND

### 1.    The Residential Exchange Program

Section 5(c) of the NWPA established the REP.  16 U.S.C. § 839c(c).  Under

the REP, BPA provides monetary benefits to Pacific Northwest utilities based on the

difference between a utility's average system cost of resources ("ASC") and BPA's

applicable PF Exchange rate, multiplied by the utility's residential load.  *Id*.  These

monetary benefits must be passed through directly to the utility's residential

consumers.  16 U.S.C. § 839c(c)(3).

### 2.    REP Settlement Agreements

In 2000, BPA and regional IOUs executed REP Settlement Agreements in

order to resolve disputes arising under BPA's implementation of the REP.  For

FYs 2002-2006, the Settlement Agreements included 900 aMW of financial benefits

and 1000 aMW of power at a cost-based rate.  Subsequent to the execution of the

REP Settlement Agreements, BPA entered into Load Reduction Agreements

("LRA") with PacifiCorp and Puget Sound Energy whereby BPA bought back the

power component of the utilities' REP Settlement Agreements as part of BPA's

strategy to limit the financial impacts of the West Coast energy crisis.  The IOUs'

REP Settlement Agreements were amended in 2004.

In 2000, BPA conducted a "WP-02 Rate Proceeding" to establish power

rates for FYs 2002-2006.  BPA allocated the costs of the REP settlements to the PF

4

Preference rate. A cost recovery adjustment clause captured the costs of the LRAs with PacifiCorp and Puget Sound Energy. A number of parties subsequently filed separate challenges to BPA's REP Settlement Agreements and BPA's WP-02 power rates, respectively, in the Ninth Circuit. On May 3, 2007, the Court issued decisions addressing these respective actions.

### 3. This Court's Decisions on BPA's 2000 REP Settlement Agreements and WP-02 Power Rates

In *Portland General Elec. Co. v. Bonneville Power Admin*., 501 F.3d 1009 (9th Cir. 2007) ("*PGE*"), the Court held that BPA's REP Settlement Agreements with the IOUs were contrary to the NWPA. In *Golden NW Aluminum, Inc. v. Bonneville Power Admin*., 501 F.3d 1037 (9th Cir. 2007) ("*Golden NW*"), the Court held that BPA had improperly allocated REP Settlement Agreement costs to BPA's rate for preference customers. The Court remanded BPA's WP-02 rates.

During the litigation of *Golden NW*, but prior to the Court's decisions, BPA conducted the WP-07 Supplemental Rate Case to establish power rates for FY 2007-2009. In establishing these rates, BPA allocated REP settlement costs in the same manner as in BPA's WP-02 rates. Because the Court held in *Golden NW* that BPA's allocation of REP settlement costs in its WP-02 rates was improper, BPA's allocation of such costs in the WP-07 rates was similarly flawed.

Also, subsequent to the *Golden NW* and *PGE* decisions, the Court reviewed challenges to the LRAs BPA executed with two IOUs. The Court dismissed two of

the petitions for lack of jurisdiction and one petition as moot.  The Court separately reviewed challenges to the 2004 amendments to the REP Settlement Agreements.  In *Public Utility Dist. No. 1 of Snohomish County, Wash. v. Bonneville Power Admin.*, 506 F.3d 1145 (9th Cir. 2007) ("*Snohomish"*), the Court remanded the amendments and a contract provision establishing a "Reduction of Risk Discount" to BPA.

### 4.      BPA's Response to the Court's Decisions

In response to the Court's decisions, BPA took a number of actions. Because the REP Settlement Agreements were found unlawful, BPA began the development of a revised Average System Cost Methodology and the negotiation of new REP contracts in order to begin the implementation of the REP in place of the REP Settlement Agreements.  *See* 16 U.S.C. § 839c(c).  These separate actions are not challenged in the petitions at bar.

With regard to the instant case, because the Court remanded BPA's WP-02 power rates; because the ratemaking and REP issues were interrelated; and because a comprehensive response to the Court's decisions was possible only if developed in a single forum, BPA published a Federal Register Notice proposing to conduct a ratemaking hearing pursuant to section 7(i) of the NWPA.  *2007 Supplemental Wholesale Power Rate Adjustment Proceeding, Public Hearings, and Opportunities for Public Review and Comment*, 73 Fed. Reg. 7539 (Feb. 8, 2008); 16 U.S.C. § 839e(i).  As explained in the Federal Register Notice, the WP-07

6

Supplemental Rate Case would: (1) establish new power rates for FY 2009; (2) determine the amount of benefits that BPA's IOU customers received, or would have received, from FY 2002 through FY 2008 under the REP settlements; (3) determine the amount of REP benefits the IOUs would have received in the absence of the REP settlements; and (4) address any difference between these two amounts.

### a. Revising BPA's FY 2009 Power Rates

Reviewing the elements of BPA's remand response demonstrates the interrelated nature of the issues in this case. First, as noted previously, because the Court held in *Golden NW* that BPA's allocation of REP settlement costs in its WP-02 rates was improper, BPA's allocation of such costs in the WP-07 rates was similarly flawed. BPA wanted to respond to the Court's decisions as promptly as possible. Due to the time it takes to conduct a general rate adjustment proceeding, BPA determined that its first opportunity to revise prospective power rates to conform to the Court's opinions was prior to the one-year FY 2009 period. However, BPA had already developed its WP-07 power rates for FY 2007-2009, and such rates had been filed with FERC for confirmation and approval. BPA therefore asked FERC to stay its review until BPA was able to complete a supplemental rate proceeding to correct its power rates for FY 2009. This would

7

permit FERC to review a single supplemented record supporting BPA's rates for FYs 2007, 2008, and 2009 and issue one confirmation and approval order.

In order to develop its FY 2009 rates, as required by law, BPA conducted the section 7(b)(2) rate test. 16 U.S.C. § 839e(b)(2). To conduct the rate test, BPA reviewed and revised its Section 7(b)(2) Legal Interpretation and Section 7(b)(2) Implementation Methodology, which govern the implementation of the rate test. The revised 2008 Legal Interpretation and Implementation Methodology were only applied in the establishment of BPA's FY 2009 rates. In establishing the FY 2009 rates, BPA did not allocate any REP Settlement Agreement costs to the PF Preference rate, thereby prospectively correcting the error the Court identified in *Golden NW*.

### b. Determining Refunds to Preference Customers for FY 2002-2008

Correcting BPA's power rates for FY 2009 only responded in part to the Court's opinions. Because BPA had allocated REP Settlement costs to the PF Preference rate in BPA's WP-02 rates (FYs 2002-2006) and BPA's WP-07 rates (FYs 2007-2009), BPA had to make an adjustment that corrected for FYs 2002-2008. This was accomplished in three basic steps. First, BPA determined the REP Settlement Agreement benefits provided to each IOU during that period. Second, BPA determined what the IOUs' REP benefits would have been in the absence of the REP Settlement Agreements (absent such Agreements, the IOUs would have

8

received benefits during the FY 2002-2008 period under the traditional REP).

Third, BPA subtracted the reconstructed REP benefits from the benefits paid under

the REP Settlement Agreements, subject to additional adjustments. After

determining the refund amount, BPA provided some of the refund through cash

payments and is recovering the remainder from the IOUs' prospective REP

benefits.

BPA's ability to implement its remand response was achieved in part

through the establishment of General Rate Schedule Provisions, which are part of

BPA's FY 2009 power rates. BPA filed its proposed FY 2009 power rates with

FERC for confirmation and approval, including the record establishing the FY

2009 rates, the Lookback amount, the 2008 Section 7(b)(2) Legal Interpretation

and the 2008 Section 7(b)(2) Implementation Methodology. 16 U.S.C. §

839e(a)(2).

### 5.    Petitions for Review Filed

Petitioner Association of Public Agency Customers ("APAC") initiated the

instant litigation by filing a petition for review on November 19, 2008. In its

petition, No. 08-74725, APAC seeks review of three components of BPA's WP-07

Supplemental Rate Case: (1) BPA's Final Record of Decision (ROD) in the WP-

07 Supplemental Rate Case, issued on September 22, 2008; (2) "the adoption by

the BPA Administrator of the Section 7(b)(2) Implementation Methodology" in the

9

WP-07 Supplemental Rate Case, and (3) the "Section 7(b)(2) Legal Interpretation, also adopted on September 22, 2008" in the WP-07 Supplemental Rate Case. (APAC Petition, at 1.)

Additional parties filed petitions for review related to BPA's WP-07 Supplemental Rate Proceeding ROD. Some parties stated they were challenging only those parts of the ROD that addressed the calculation of the Lookback Amounts owed by BPA's IOU customers, but not the parts of the ROD that established BPA's revised power rates for FY 2009. Other parties acknowledged that FERC has not yet approved the rates established in the ROD and the Court therefore may lack jurisdiction to review any decisions in the ROD, but filed the petitions nevertheless as a precautionary measure.

## ARGUMENT

**I.** **Pursuant To The NWPA And This Court's Previous Decisions, The Court Lacks Jurisdiction To Review BPA's Rate Determinations Until BPA's Rates Are Confirmed And Approved By FERC.**

    **A.** **All Of BPA's WP-07 Supplemental ROD Decisions Are Part Of BPA's Comprehensive Response To The Court's Remand Order And Should Be Reviewed At One Time**

From BPA's initial Federal Register Notice through the Final ROD in the WP-07 Supplemental Rate Case, BPA consistently stated that it conducted the proceeding for one purpose: to respond to the Court's recent decisions, including the remand of BPA's WP-02 rates in *Golden NW*. In order to fully respond to the

Court's decisions, BPA had to determine the amount of REP Settlement Agreement benefits previously provided to the IOUs that should be recovered and provided to BPA's preference customers. Because REP Settlement Agreement costs had been improperly allocated to preference customers' FYs 2002-2006 power rates, BPA's response to the Court's remand could not be made outside the context of a BPA ratemaking proceeding.

When BPA conducted the WP-07 Supplemental Rate Proceeding, BPA chose to act promptly in response to *Golden NW* by correcting BPA's cost allocations in its FY 2009 rates, the only year for which it could promptly establish new prospective rates. Nevertheless, BPA would not have revised its FY 2009 rates in the absence of the Court's decisions. The revision of the FY 2009 rates was only one element of BPA's comprehensive response. All of the related elements of BPA's response were determined in a single rate hearing and were addressed in a single decision document: the WP-07 Supplemental ROD. The fact that BPA's FY 2009 rates must receive confirmation and approval by FERC prior to judicial review does not mean that the other elements of BPA's response, which were determined in the same hearing, should be reviewed separately. This would lead to an irrational bifurcation of judicial review of BPA's response to the Court's remand of BPA's WP-02 rates.

11

**B. The NWPA Precludes Judicial Review Of BPA's Rate Determinations Until FERC Has Granted Final Confirmation And Approval**

NWPA section 9(e)(5) provides that suits to challenge "final actions and decisions taken pursuant to this Act by the Administrator . . . or the implementation of such final actions" shall be filed in this Court. 16 U.S.C. § 839f(e)(5). Section 9(e)(1)(G) of the Act provides that "final rate determinations under section 7 [of the Act]" are "final actions." 16 U.S.C. § 839f(e)(1)(G). Section 9(e)(4)(D) provides that "rate determinations pursuant to section 7 *shall be deemed final upon confirmation and approval by the Federal Energy Regulatory Commission*." 16 U.S.C. § 839f(e)(4)(D) (emphasis added). Accordingly, this Court lacks jurisdiction to review BPA's rate determinations prior to FERC's final confirmation and approval.

**C. This Court Has Consistently Held That It Lacks Jurisdiction To Review BPA's Rate Determinations Until FERC Grants Final Confirmation And Approval**

In *Cent. Lincoln People's Util. Dist. v. Johnson,* 735 F.2d 1101 (*Central Lincoln II*), this Court reviewed BPA's first power rates developed under the NWPA. During this seminal review of the Act's jurisdictional provisions, the Court recognized that "section 9(e)(4)(D) precludes us from treating rate determinations as final actions before FERC has confirmed and approved the rates." *Id*. at 1109. The Court noted that "[s]ound considerations support this result. . . . [I]f we were to

12

exercise judicial review of rates before FERC has confirmed and approved them, it would be wasteful in the event of a FERC remand." *Id.*

After *Central Lincoln II*, this Court has consistently affirmed its decision that "[a] rate determination is specifically enumerated as a 'final action' taken pursuant to the Act, 16 U.S.C. § 839f(e)(1)(G), and it is 'deemed final' upon confirmation and approval by the FERC. 16 U.S.C. § 839f(e)(4)(D)." *Puget Sound Energy v. United States*, 310 F.3d 613, 617 (9th Cir. 2002) (dismissing challenge to rate implementation for lack of jurisdiction). In *Confederated Tribes of Umatilla Indian Reservation v. Bonneville Power Admin.*, 342 F.3d 924, 929 (9th Cir. 2003), certain fish interests challenged BPA's WP-02 Rate Case ROD, which established BPA's FY 2002-2006 power rates. The petitioners claimed the ROD was inconsistent with the equitable treatment of fish and wildlife. The Court dismissed the challenge, finding "[a]s for the 2002 rate case, the Federal Energy Regulatory Commission had not approved the rate determination at the time the petitions were filed, and therefore BPA's action was not final. 16 U.S.C. § 839f(e)(4)(D)."

In *Atlantic Richfield Co. v. Bonneville Power Admin.*, 818 F. 2d 701, 705 (9th Cir. 1987), BPA's direct service industrial customers ("DSI") challenged a customer charge contained in BPA's proposed 1983 power rates. The DSIs challenged the customer charge after BPA had issued its ROD, but before FERC had granted final confirmation and approval to BPA's rates. The Court dismissed

the challenge because it was filed prior to final FERC approval.  The Court reached the same conclusion in *City of Seattle v. Johnson*, 813 F.2d 1364, 1367 (9th Cir. 1987), where certain preference customers challenged the availability charge established in BPA's 1983 ROD prior to final FERC approval of BPA's rates.

In *Pub. Util. Comm'n of Cal. v. FERC*, 814 F.2d 560, 561 (1987), certain California entities challenged BPA's nonfirm energy rate, claiming that BPA failed to hold hearings prior to the rate's adoption.  The Court stated that "a challenge to a BPA rate determination will not be entertained by this court, even when it is alleged that BPA followed unconstitutional ratemaking procedures, until FERC has passed final judgment on the rate." *Id.*

In *Pub. Util. Comm'n of Cal. v. FERC*, 814 F.2d 560, 561 (1987), this Court dismissed petitions for review of BPA's 1986 nonfirm energy rate schedules because they were filed before FERC confirmed and approved the rates.  The Court noted that its "reluctance to review BPA rate orders, including the procedures followed in their promulgation, until after FERC confirmation is based on the doctrines of ripeness and exhaustion, as well as the clear language of the Regional Act." *Id.* (*citing Or. Pub. Util. Comm'r,* 767 F.2d at 629, for the proposition that "refusing intervention in current agency proceedings ensures against premature, possibly unnecessary, and piecemeal judicial review.").

14

In *Public Util. Comm'r of Oregon v. Bonneville Power Admin.*, 767 F.2d 622, 629 (9th Cir. 1985), the Court stated:

> The absence of an express finality prerequisite in statutes providing for appellate review of administrative actions, such as the Act, does not prevent the implication of such a requirement. Courts commonly attribute a finality requirement to statutes that simply provide for review of administrative orders and actions in order to *avoid the disruption, delay, and piecemeal review that accompany interference with pending administrative proceedings.*

*Id*. (emphasis added) (citations omitted).

The Court has applied the same principle in challenges to the average system cost ("ASC") rates BPA establishes to implement the REP. In *CP National Corp. v. Bonneville Power Admin.*, 928 F. 2d 905, 911 (9th Cir. 1991), an investor-owned utility challenged BPA's exclusion of certain costs from the utility's ASC. The utility filed the challenge after BPA's determination but prior to FERC's final approval and prior to FERC's denial of a petition for rehearing. The Court dismissed the challenge for lack of jurisdiction.

In summary, where a party has challenged a BPA ratemaking determination after issuance of a ROD, but prior to final FERC confirmation and approval, this Court has consistently dismissed such challenges for lack of jurisdiction.

**D. This Court Has Held That It Lacks Jurisdiction To Review BPA's Rate Determinations Until FERC Grants Final Confirmation And Approval, Even If Such Matters Are Not Reviewed By FERC**

15

Petitioners argue that certain decisions contained in the WP-07 Supplemental ROD were not used in establishing BPA's FY 2009 rates and will not be reviewed by FERC, and therefore the Court can review such issues prior to final FERC confirmation and approval of the FY 2009 rates. This Court has recognized, however, that regardless of whether FERC has jurisdiction to review certain issues, judicial review of such issues must await FERC's final confirmation and approval of the rates.

Numerous cases confirm that FERC's limited jurisdiction to review BPA's rates does not permit rate case determinations to be challenged prior to FERC's final confirmation and approval. In *Confederated Tribes*, 342 F.3d at 929, the equitable treatment of fish and wildlife in BPA's rates was outside FERC's jurisdiction, but the Court precluded judicial review until FERC's confirmation and approval of BPA's rates. In *Atlantic Richfield*, 818 F. 2d at 705, a customer charge in BPA's 1983 power rates was a rate design matter outside FERC's jurisdiction, but the Court precluded judicial review until FERC's confirmation and approval of BPA's rates. In *City of Seattle*, 813 F.2d at 1367, an availability charge in BPA's 1983 rates was a rate design matter outside FERC's jurisdiction, but the Court precluded judicial review until FERC's confirmation and approval of BPA's rates. In *Pub. Util. Comm'n of Cal.*, 814 F.2d at 561, a challenge to BPA's ratemaking

16

procedures was outside FERC's jurisdiction, but the Court precluded judicial review until FERC's confirmation and approval of BPA's rates.

In *Industrial Customers of NW. Util. v. Bonneville Power Admin.*, 408 F.3d 638 (9th Cir. 2005), certain parties challenged BPA's Safety-Net Cost Recovery Adjustment Clause ("SN CRAC") ROD, including BPA's decision to trigger the adjustment clause. The Court recognized that FERC's rate review would not provide the parties with an opportunity to challenge BPA's trigger decision. *Id*. at 645. Nevertheless, the Court concluded that "it is not subject to judicial review until final agency action with respect to the rate. *See Pub. Util. Comm'r of Oregon v. BPA*, 767 F.2d 622, 629 (9th Cir.1985) (noting that challenges to the BPA's rate-making process not subject to FERC review may still be raised on judicial review of the final FERC rate decision, but cannot be raised in an interlocutory petition for review)."

The foregoing holdings are particularly applicable to the instant case. In the instant case, BPA held an evidentiary ratemaking hearing in order to comprehensively respond to the Court's decisions and the remand of BPA's WP-02 rates. BPA did so by (1) revising BPA's WP-07 rates for FY 2009 to prospectively correct the cost allocation error identified in *Golden NW*; (2) determining benefits paid to IOUs under the REP Settlement Agreements from FYs 2002-2008; (3) determining the REP benefits that the IOUs would have

17

received during that period in the absence of the REP Settlement Agreements; and (4) in simple terms, refunding the difference between items (2) and (3) to BPA's preference customers. All of these determinations were made in a single hearing and included in a single ROD. Although FERC may lack jurisdiction to review some of these issues, judicial review of such issues must await final confirmation and approval of BPA's related rates. The decisions that addressed the determination of the refund amount are "so entangled with the ratemaking process that [the Court] must await FERC review." *Id.*

### E. This Court Has Held That It Lacks Jurisdiction To Review BPA's Rate Determinations Until FERC Grants Final Confirmation And Approval Because Failure To Do So May Result In Bifurcated Judicial Review Of A Single Action And Inconsistent Decisions

In the instant cases, petitioners seek to challenge only some of the decisions BPA made in the WP-07 Supplemental ROD, more specifically, those issues related to the calculation of the Lookback Amount refunded to preference customers (although one group of petitioners attempts to challenge a ratemaking decision regarding conservation that is not legitimately related to the Lookback). There were, however, many additional issues addressed in the same hearing and decided in the same ROD. If the Court were to review only the issues identified by petitioners, there would be an irrational bifurcation of judicial review, with some issues reviewed by the Court at one time and the remainder of the issues reviewed separately by the Court at a later time. This Court has recognized that such

18

bifurcated review is contrary to judicial efficiency and may result in inconsistent decisions.

Early in this Court's review of BPA's final actions under the NWPA, an environmental protection group attempted to challenge BPA's power contracts in Federal district court. The district court dismissed the matter for lack of jurisdiction, noting that the Ninth Circuit had exclusive jurisdiction to review such challenges. In *Forelaws on Board v. Johnson*, 709 F.2d 1310, 1313 (9th Cir. 1983), this Court concluded that bifurcating judicial review of BPA's contracts between the district court and this Court would be irrational: "Bifurcation in this case would be would result in far more confusion, delay and potential for conflicting results. That is because . . . the bifurcation appellants seek here could result in the very same agency decision being reviewed simultaneously in courts at two different levels.").

In *Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, the Court disapproved of concurrent district court jurisdiction over the constitutionality of BPA's revision of the 1981 ASC Methodology. The Court explained that concurrent jurisdiction "would create the bifurcated system of review that we criticized in *Forelaws on the Board v. Johnson,* 709 F.2d 1310, 1313 (9th Cir.1983)." The Court further explained that it does not attain jurisdiction until FERC approves BPA action because the "likelihood of delay, duplication, and

19

inconsistency resulting from the additional level of possible simultaneous judicial review is exactly what we criticized in *Forelaws.*"  *Id.*

Although the birfurcation of judicial review in the foregoing cases involved a district court and an appellate court, the problems of judicial inefficiency and inconsistent decisions apply equally where separate cases challenge the same agency action before this Court.  Failure to dismiss the instant consolidated cases would result in petitions regarding some decisions in the WP-07 ROD being addressed at one time by the Court while petitions challenging other issues from the same ROD would be addressed after FERC granted final confirmation and approval of the rates established in the ROD.  This "likelihood of delay, duplication, and inconsistency" can be eliminated by dismissing the instant petitions and conducting judicial review of all decisions in the ROD at the same time, based on consolidated petitions filed after FERC's final confirmation and approval order, which are currently before the Court in *Avista Corp. et al. v. Bonneville Power Admin.*, Nos. 09-73160 *et al.*

## CONCLUSION

For the foregoing reasons, this Court should dismiss the consolidated petitions for lack of jurisdiction.  Petitioners have already refiled their petitions within 90 days after FERC granted confirmation and approval to BPA's FY 2009 power rates, and such petitions are currently before the Court.

Dated this 18th day of December 2009.


Respectfully submitted,


RANDY A. ROACH
General Counsel
TIMOTHY A. JOHNSON
Assistant General Counsel
Bonneville Power Administration
P.O. Box 3621
Portland, OR 97208
503-230-4201

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
STEPHEN J. ODELL
Assistant U.S. Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
503-727-1024


*/s/ Kurt R. Casad*

KURT R. CASAD
Special Assistant U.S. Attorney

21