**ORAL ARGUMENT IS NOT YET SCHEDULED**

Consolidated Cases 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113, 08-75130, 08-75132, 08-75133, 08-75161, 08-75165

_____

No. 08-74725

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, ET AL.
PETITIONERS,
v.
BONNEVILLE POWER ADMINISTRATION,
RESPONDENT.

_____

PETITION FOR REVIEW UNDER THE NORTHWEST POWER ACT

_____

INTERVENOR'S BRIEF OF THE
ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, ET AL.

_____

| | | |
|---|---|---|
| Michael Alcantar | Michael Kunselman | Judith Endejan |
| Donald Brookhyser | Alston & Bird | Graham & Dunn |
| Alcantar & Kahl LLP | The Atlantic Building | Pier 70 |
| 1300 SW Fifth Avenue | 950 F Street, NW | 2801 Alaskan Way |
| Suite 1750 | Washington, DC 20004 | Suite 300 |
| Portland, OR 97201 | Phone: 202 .756.3395 | Seattle, WA 98121 |
| Phone: 503.402.8702 | Fax: 202.654.4895 | Phone: 206 340.9694 |
| Fax: 503.402.8882 | michael.kunselman@alston. | Fax: 206 340.9599 |
| mpa@a-klaw.com | com | jendejan@grahamdunn.co |
| deb@a-klaw.com | | m |

Attorneys for Intervenor, Association of Public Agency Customers, et al.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Ninth Circuit Rule 26.1, the Association of Public Agency Customers (APAC), represents it is an unincorporated *ad hoc* organization composed of Georgia-Pacific LLC, Grays Harbor Paper LP, JR Simplot Co., Longview Fibre Paper and Packaging, Inc., Ponderay Newsprint Company, and Weyerhaeuser Company.

Petitioner Georgia-Pacific, LLC is a wholly-owned indirect subsidiary of Koch Industries, a privately held company. No stock is publicly traded.

Petitioner Grays Harbor Paper LP is a privately-owned limited partnership.

Petitioner JR Simplot Co. is a privately-owned company. No stock is publicly traded.

Petitioner Longview Fibre Company is a wholly-owned subsidiary of Brookfield Asset Management Co., a publicly-held company.

Petitioner Ponderay Newsprint Company is a partnership of the following corporations: AbitibiBowater, Inc., Central Newsprint Company Inc., Bradley Paper Company, Copley Northwest, Inc., Puller Paper Company, Tribune Newsprint Company, Nimitz Paper Company, Newsprint Ventures Inc., and Wingate Paper Company.

Weyerhaeuser Company is a publicly-held company. It has no parent corporation and no corporation owns 10% or more of its stock.

**TABLE OF CONTENTS**

I.    STATEMENT OF JURISDICTION ........................................................ 1

II.   ISSUES PRESENTED FOR REVIEW ..................................................... 1

III.  STATEMENT OF THE CASE ............................................................... 2

IV.  STATEMENT OF FACTS ...................................................................... 2

V.   SUMMARY OF ARGUMENT................................................................ 2

VI.  STANDARD OF REVIEW .................................................................... 3

VII. ARGUMENT......................................................................................... 3

      A.    BPA's Decision To Refund Amounts Illegally Charged To
            Preference Customers In 2002-2006 Rates Does Not Constitute
            Impermissible Retroactive Ratemaking ........................................ 3

            1.    BPA May Correct its Preference Customer Rates to
                      Remove the Costs of the REP Settlements in Accordance
                      with this Court's Mandate in *Golden Northwest* ............... 4

      B.    Failure of Petitioners to Obtain a Stay in Original Appeal is
            Inconsequential.................................................................................. 15

            1.    There Is No Legal Requirement to Obtain a Stay in Order
                      to Receive a Remedy for Harms that Are Ultimately
                      Proven ............................................................................... 15

            2.    A Stay Was Not Practical and Would Not Have Been
                      Granted Under the Facts in this Case................................. 17

      C.    Firm Sales To IOUs Were Properly Included In The Lookback
            Amount .............................................................................................. 22

      D.    Incorporation of Other Brief ......................................................... 23

VIII. CONCLUSION....................................................................................... 24

# TABLE OF AUTHORITIES

**STATUTES**

16 U.S.C. §838i(b)(12) ................................................................................2


**CASES**

*Boston Edison Co. v. FPC*, 557 F.2d 845, 849
(D.C.Cir.1977) ........................................................................................ 4

*Bowen v. Georgetown University*, 488 U.S. 204 (1988) ............................. 9, 10

*Holloway v. United States, 789 F.2d 1372, 1374 (9th Cir. 1986)* ................ 16

*Indiana & Michigan Elec. Co. v. FPC*, 502 F.2d 336, 339 n.8 (D.C.Cir. 1974),
*cert. denied*, 420 U.S. 946 (1975) .......................................................... 4

*Iowa Power & Light Co. v. United States*, 712 F.2d 1292, 295-97
(8th Cir.1983) .......................................................................................... 4

*Livermore v. Heckler*, 743 F.2d 1396 (9th Cir.1984) .................................. 11

*Natural Gas Clearinghouse v. FERC,* 965 F.2d 1066, 1073 (D.C. Cir. 1992)
(*per curiam*) ....................................................................................... 4, 5, 14

*New York State Elec. & Gas Corp. v. Saranac Power Partners L.P.,
117 F.Supp.2d 211 (N.D.N.Y. 2000)* ................................................... 13

*Newman v. Apfel*, 223 F.3d 937 (9th Cir. 2000) ....................................... 11

*Public Utilities Com'n of State of Cal. v. FERC*, 988 F.2d 154
(D.C. Cir 1993) ....................................................................................... 6

*Pub. Util. Comm. of State of Cal. v. FERC*, 814 F.2d 560, 562
(9th Cir. 1987) ........................................................................................ 20

*PUC of Oregon v. BPA,*767 F.2d 622 (1985) ............................................ 20

*United Gas Improvement v. Callery*, 382 U.S. 223, 229 (1965) ................. 4-6, 11

*Verizon Telephone Companies v. F.C.C.*, 269 F.3d 1098
(D.C.Cir. 2001) ...................................................................................... 4

## I.  STATEMENT OF JURISDICTION

Pursuant to 16 U.S.C. §§832e and 839e, BPA has subject matter jurisdiction over decisions in the BPA Administrator's Final Record of Decision (hereinafter the WP-07S ROD) in the 2007 Supplemental Wholesale Power Rate Case (WP-07S).  BPA's decisions in the WP-07S ROD are the subject of this appeal.  The Administrator adopted the actions appealed herein on September 22, 2008.  All of the challenged actions are final.

This court has jurisdiction to review final actions of BPA under 16 U.S.C. §839f(e)(5).  The Court's authority is further delineated in 28 U.S.C. §2106.

APAC filed a petition for review on November 19, 2008.  It is timely under 16 U.S.C. §839f(e)(5).  Pursuant to Circuit Rule 15-3.2(d), APAC is deemed an intervenor in the remaining consolidated cases.

## II.  ISSUES PRESENTED FOR REVIEW

1.  Is BPA's compliance with the remand from this court — that is, determining the amount of illegal over-collections and providing refunds to Preference Customers — consistent with the legal restrictions on retroactive ratemaking?

2.  Were petitioners in the *PGE* and *Golden NW* cases required to obtain a stay of BPA's rates pending this court's review, and does their failure to obtain a stay have any legal consequences?

3. Did BPA properly include in the calculation of improper overcollections the value of firm power sales to the IOUs made as part of the residential exchange program?

## III. STATEMENT OF THE CASE

APAC adopts and incorporates by reference its Statement of the Case contained in its Initial Brief, filed on August 19, 2009.

## IV. STATEMENT OF FACTS

APAC adopts and incorporates by reference its Statement of Facts contained in its Initial Brief, filed on August 19, 2009.

## V. SUMMARY OF ARGUMENT

BPA may provide refunds to parties to cure a legal error on remand from a court. The rules regarding retroactive administrative action permit such action when undertaken to comply with a court order.[1]

The Idaho Public Utility Commission (IPUC) argues that the original petitioners should have sought a stay before FERC or this court while appealing the 2002 rates, but identifies no legal consequence for the failure to obtain a stay. Nor does it explain how a court could have granted a stay when a stay would have prevented BPA from collecting any revenue and recovering its costs, and where the

---

[1]     16 U.S.C. §838i(b)(12).

issues raised did not create irreparable harm, but harm that may be cured adequately by monetary relief.

BPA properly included in the calculation of the refunds the value of the firm power sales it made to the Investor-owned Utilities (IOUs) as part of the residential exchange program.

## VI.  STANDARD OF REVIEW

APAC adopts the Standard of Review presented in its Opening Brief.

## VII.  ARGUMENT

### A.  BPA's Decision To Refund Amounts Illegally Charged To Preference Customers In 2002-2006 Rates Does Not Constitute Impermissible Retroactive Ratemaking

In their respective briefs, the Idaho Public Utilities Commission ( IPUC) and the Oregon Public Utility Commission (OPUC) (collectively, the PUCs) contend BPA is prohibited by retroactive ratemaking principles from correcting the overcharges paid by Preference Customers during the 2002-2006 rate period. These overcharges, as recognized by this court, were caused by BPA's unlawful inclusion of REP Settlement costs in past rates charged to Preference Customers. The essence of the PUCs' argument is that, by creating a system to refund amounts overcharged to Preference Customers for the 2002-2006 rate period, BPA is engaging in prohibited retroactive rulemaking and/or ratemaking.  This argument relies on a fundamental misunderstanding of these doctrines and their applicability.

-3-

BPA is not only permitted to specifically determine the overcharges in its 2002-2006 rates to correct the legal error identified by this court; its failure to do so would be a direct violation of the Ninth Circuit's mandate.[2]

**1.  BPA May Correct its Preference Customer Rates to Remove the Costs of the REP Settlements in Accordance with this Court's Mandate in *Golden NW***

Retroactive rulemaking and ratemaking by an agency are *generally* prohibited.  However, well-established precedent refutes the PUCs' argument that these doctrines preclude BPA from curing the errors identified by this court in the 2007 Decisions.  An agency is permitted to implement specific retroactive adjustments in order to effectuate a judicial decision reversing its original order.[3]

The guiding principles regarding an agency's authority to implement retroactive adjustments to effectuate a judicial decision were articulated by the

---

[2]  Although BPA has the authority to make adjustments to its 2002-2006 rates in accordance with this court's decision in the *Golden NW* case, that authority is limited to taking corrective actions consistent with the scope of this court's mandate.  BPA exceeded this mandate and adopted changes to portions of its 2002-2006 rates that were not challenged.  Because these changes were not within the scope of this court's remand, such changes *do* constitute impermissible retroactive rulemaking.  APAC Initial Brief at 38-50.

[3]  *See, e.g.*, *United Gas Improvement v. Callery*, 382 U.S. 223, 229 (1965); *Indiana & Michigan Elec. Co. v. FPC*, 502 F.2d 336, 339 n.8 (D.C.Cir.1974), *cert. denied*, 420 U.S. 946 (1975); *Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1073 (D.C. Cir. 1992) (*per curiam*) *Boston Edison Co. v. FPC*, 557 F.2d 845, 849 (D.C.Cir.1977); *Iowa Power & Light Co. v. United States*, 712 F.2d 1292, 295-97 (8th Cir.1983); *Verizon Telephone Companies v. F.C.C.*, 269 F.3d 1098 (D.C.Cir. 2001).

Supreme Court in *United Gas Improvement v. Callery*.[4]  In that case, the Court

sustained a Federal Power Commission order directing natural gas producers to

refund the difference between the rates collected pursuant to the Commission's

original order (that were deemed unlawful by the Court), and the lower rates

established on remand.  The Court rejected the notion that the Commission lacked

the authority to order refunds because they would apply to gas producers

retroactively.  Pointedly, the Court noted that although an agency's power to fix

rates was generally prospective only, that authority is not so restricted when the

order adopting those rates was overturned on appeal by a reviewing court.[5]  The

Court explained that "an agency, like a court, can undo what is wrongfully done by

virtue of its order."[6]

This principle has been applied in numerous subsequent decisions, including

*Natural Gas Clearinghouse v. FERC*.[7]  This case involved the issue of whether a

provision of the Natural Gas Act dealing with periodic rate adjustments

appropriately included adjustments for depreciation expenses.  After its initial

order finding that periodic rate adjustments did not apply to depreciation expenses

was overturned, FERC adopted the opposite view and retroactively allowed

---

[4]     382 U.S. 223 (1965).

[5]     *Id.* at 229.

[6]     *Id.*

[7]     965 F.2d 1066 (D.C. Cir. 1992).

periodic rate adjustments for depreciation expenses. The result of FERC's adoption of the court's decision permitted pipeline companies to bill customers to recover the depreciation expenses that had been previously disallowed by FERC. The D.C. Circuit, relying on *Callery*, held that FERC had acted lawfully on remand by applying its revised interpretation retroactively and allowing the pipeline companies to impose appropriate surcharges.[8] Moreover, the court made it clear that the scope of FERC's authority was not circumscribed by the relevant statute (the Natural Gas Act), which granted explicit authority to order refunds only under certain circumstances. Rather, opined the court, FERC's authority was based on "the general principle of agency authority to implement judicial reversals explored in *Callery*."[9]

In another case, *Public Utilities Com'n of State of Cal. v. FERC*,[10] the D.C. Circuit once again upheld a FERC decision to order retroactive relief to pipeline companies in response to a judicial reversal. Relying on *Natural Gas Clearinghouse*, the court found that this case was even a stronger candidate for FERC's exercise of its remedial authority. The court noted that unlike the initial order in *Clearinghouse* which was reversed only for a lack of reasoned decisionmaking, this case involved a FERC order that had been found

---

[8]    *Id.* at 1073.

[9]    *Id.*

substantively invalid as arbitrary and capricious and potentially "prejudicial" to the pipelines.[11]

The facts and procedural scenario in the current appeal of the BPA WP-07S proceedings are indistinguishable from these cases. In *Golden NW*, this court addressed petitions challenging the legality of BPA's 2002-2006 rates insofar as they unlawfully passed on to Preference Customers a portion of the costs of the REP Settlements. Based on its ruling in *Portland General* that the NWPA did not permit BPA to "burden its Preference Customers with part of the costs of the REP settlements," this court held in *Golden NW* that BPA was obligated to establish rates for Preference Customers under the assumption that "no purchases or sales were made under the REP program." Having found that BPA had set rates using a methodology different than the one required by law, this court remanded to BPA to correct its rates in accordance with this opinion." On remand, BPA determined that in order to implement this mandate it must calculate the costs illegally charged to Preference Customers during the 2002-2006 period and return this amount to Preference Customers. Because the IOUs were the beneficiaries of the illegal REP Settlement scheme, BPA logically determined the IOUs should bear the costs associated with making Preference Customers whole. BPA chose to implement

---

[10]     988 F.2d 154 (D.C. Cir 1993).

[11]     *Id.* at 163.

this remedy through a reduction in future REP benefits provided to the IOUs. Although APAC takes issue with certain elements of BPA's proposal to repay Preference Customers (*see* APAC Initial Brief at 31-38), including its decision to limit repayment to the level of future REP benefits made available to IOUs, the *Callery* principles apply. BPA has authority to remedy the specific defects identified by this court in *Golden NW*. The full assessment of the harm and the method for returning overcharges to APAC members may be subject to challenge; but BPA's surcharging the IOUs going forward to recover excess payments made during the 2002-2006 rate period is well within BPA's authority.

Despite the precedent confirming the authority of agencies to make adjustments that have a retroactive effect in order to implement judicial reversals, the PUCs nevertheless maintain that BPA's selected remedy should be set aside. None of the arguments advanced by the PUCs, including their attempts to distinguish relevant precedent, are defensible.

The OPUC contends that because no statute grants BPA explicit authority to provide refunds to Preference Customers, therefore, BPA is prohibited from refunding unlawful overcharges to Preference Customers.[12] OPUC bases this argument on the contention that BPA's proposed remedy is a rulemaking.[13] OPUC

---

[12]     OPUC Brief at 12.

[13]     *Id.* at 13-14.

then cites to cases, most notably the Supreme Court's decision in *Bowen v. Georgetown University*,[14] for the proposition that an agency's rulemaking authority does not, as a general matter, include the power to promulgate retroactive rules unless such power is conveyed by Congress in express terms. Finding no such explicit authorization in BPA's governing statutes, OPUC concludes that BPA's decision to provide refunds of overpayments to Preference Customers using future set-offs against REP benefits paid to the IOUs is unlawful. Although OPUC is correct that *Bowen* and similar cases reflect a *general* prohibition against retroactive rulemaking by agencies, its argument relies on a fundamental misreading of these cases. Simply put, none of these cases prohibit an agency from adopting retroactive adjustments to implement *a judicial reversal of an order or regulation*. Instead, all of the cases cited by OPUC involved actions undertaken by agencies *at their own behest.*

For instance, *Bowen* involved an attempt by the Secretary of Health and Human Services (HHS) to re-implement a regulation, retroactive to the original adoption date of the regulation. The implementation of the regulation was rejected previously by a lower court for failure to follow notice and comment procedures.[15] The Supreme Court refused to permit the re-implementation of the regulation to

---

[14]    488 U.S. 204 (1988).

[15]    *Id.* at 206-207.

the earlier date. The Court held that the applicable statutes provided no basis for the Secretary to engage in retroactive rulemaking. OPUC broadly interprets this holding to mean that "a court opinion invalidating rules promulgated by an agency does not authorize the agency to engage in curative retroactive ratemaking." The OPUC extends this flawed logic to allege that BPA's actions in the WP-07S rate proceeding to identify and refund unlawful overcharges violates the Supreme Court's holding in *Bowen*.[16]

The OPUC misconstrues the meaning of the term "curative retroactive ratemaking" in this context. In *Bowen*, the Secretary argued that the judicial invalidation of a prospective rule creates a justification for "curative rulemaking." The Secretary argued that an invalidated rule can be cured of its identified defects and then be re-issued retroactive to past time periods.[17] The Court rejected this argument.[18] Unlike the Secretary in *Bowen*, however, BPA is not attempting to "cure" the defects in its original rulemaking and re-issue a revised rule retroactive to the original effective date. Rather, BPA's proposal, insofar as it involves removing the illegal costs of the REP Settlements from Preference Customers rates

---

[16]    OPUC Brief at 32.

[17]    488 U.S. at 215.

[18]    *Id.*

for 2002-2006, is limited to curing the *impacts* of an invalidated rule, *i.e.* "undo[ing] what is wrongfully done by virtue of its order."[19]

This court explicitly recognized the distinction between impermissible retroactive ratemaking and the legitimate authority to cure impacts of an invalidated agency determination in *Newman v. Apfel*.[20] That case involved a challenge to a Social Security Administration (SSA) regulation regarding the calculation of Supplemental Security Income benefits. In that case, this court rejected the SSA's argument that the plaintiffs did not have standing to sue due to lack of redress. SSA argued that because the only remedy SSA could provide was to promulgate a new prospective regulation, and it would not be permitted to implement a regulation to provide redress retroactively.[21] This court distinguished *Bowen*, explaining that "discharging a judicial order to make [plaintiffs] whole would not require the Commissioner to promulgate retroactive regulations in the way that the court contemplated in *Bowen*. *Bowen* spoke only in terms of an agency's inability to apply rules retroactively *sua sponte*." The court explained that the authority of courts to order retroactive relief has never been questioned, citing to *Livermore v. Heckler*,[22] in which this court ordered the "recalculation of benefits

---

[19]     *Callery*, 382 U.S. at 229.

[20]     223 F.3d 937 (9th Cir. 2000).

[21]     *Id.* at 941.

[22]     743 F.2d 1396 (9th Cir.1984).

erroneously calculated as well as prospective implementation of the correct [rule]."[23]

The OPUC attempts to distinguish *Newman* and *Livermore*, reasoning they were decided on the grounds that "the Court itself could give the plaintiff relief."[24] OPUC does not explain, however, how this view is conceptually any different from the present situation, in which this court directed BPA to provide relief by setting rates in accordance with the NWPA to remove the costs of the REP Settlements from Preference Customer rates. IPUC contends the difference is that, unlike *Newman* and *Livermore*, the specific mandate in *Golden NW* did not compel BPA to make Preference Customers whole.[25] IPUC apparently reads this court's mandate to "set rates in accordance with this opinion" as applying only to prospective rates. This interpretation, however, finds no support whatsoever in either the language of the decision or, for that matter, in basic logic.

The only issue before this court in *Golden NW* was the propriety of BPA's 2002-2006 rates; therefore, the rates the court remanded back to BPA to "set" could only have been the 2002-2006 rates. Moreover, because this court held BPA must set Preference Customer rates under the assumption that "no purchases or sales were made under the REP program," there is no doubt the court's mandate

---

[23]     *Id*. at 1405.

[24]     OPUC Brief at 31.

requires BPA to revise the 2002-2006 rates for Preference Customers to comply with the NWPA.  Finally, IPUC's argument begs the question: why would this court remand the case back to BPA if the only remedy was prospective.  Under such circumstances, there would have been no need for a remand, because there would have been nothing more for BPA to do with respect to the 2002-2006 rate period.  A plain reading of the *Golden NW* decision is that it compelled BPA to correct the errors in the rates for 2002-2006 to remove the REP costs illegally charged to Preference Customers.

The OPUC's attempt to distinguish other cases in which courts have held that agencies can make retroactive adjustments to correct legal errors, specifically *Natural Gas Clearinghouse* and *Public Utility Comm'n of Calif*, fare no better.  OPUC's only rationale as to why these cases do not control the outcome of this issue is its assertion that they did not involve agency rulemaking authority, but rather addressed the filed rate doctrine and rule against retroactive ratemaking.[26]  This is a distinction without any meaningful difference.  First, well established law holds that ratemaking is a quasi-legislative form of rulemaking.[27]  Second, as the court in *Natural Gas Clearinghouse* explained, the authority of agencies to make

---

[25]  IPUC Brief at 24.

[26]  OPUC Brief at 31.

[27]  *See New York State Elec. & Gas Corp. v. Saranac Power Partners L.P.*, 117 F.Supp.2d 211 (N.D.N.Y. 2000).

retroactive adjustments under these circumstances is based on "the general principle of agency authority to implement judicial reversals" rather than any specific statutory grant of authority.[28]  As such, the fact that *Natural Gas Clearinghouse* and *Public Utility Comm'n of Calif*, arose from orders issued under the Natural Gas Act is not determinative of BPA's authority under the facts of this appeal.

Third, the application of the PUCs' interpretations regarding the limits of retroactivity would lead to absurd and unjust results.  Most significantly, it would undermine the appellate review function of courts by preventing the remedial actions of a properly and timely challenged illegal agency action.  As the court in *Natural Gas Clearinghouse* explained "without such corrective power [parties] would be substantially and irreparably injured by FERC errors, and judicial review would be powerless to protect them from much of the losses so incurred."[29]

It is difficult to imagine Congress intended such a drastic limit on the ability of affected parties to effectively redress illegal agency action, and on the authority of reviewing courts to provide such remedies.  It is also likely that adopting such a severe limitation on redress would cause instability and uncertainty in highly regulated industries.

---

[28]    965 F.2d at 1073.

[29]    *Id.* at 1064-65.

For all of these reasons, APAC urges this court to reject the PUCs' argument that the general prohibition against retroactive rulemaking deprives BPA of the specific authority to provide relief to Preference Customers for overcharges relating to the 2002-2006 rate period in accordance with this court's mandate in *Golden NW*.

**B.     Failure of Petitioners to Obtain a Stay in Original Appeal is Inconsequential**

The IPUC argues the successful petitioners in *PGE* are precluded from receiving a remedy for the harm they proved because they did not seek a stay of the REP Settlement Agreements and of the WP-02 rates, pending appeal.[30]  This argument fails for two reasons.  First, there is no legal requirement to have sought a stay of BPA's actions in order to receive a remedy upon appeal.  Second, a stay was not practical and almost certainly would not have been granted under the facts in this case.

**1.     There Is No Legal Requirement to Obtain a Stay in Order to Receive a Remedy for Harms that Are Ultimately Proven**

The IPUC observes that no party sought a stay at FERC or with this court of the REP Settlement Agreements or the WP-02 rates pending appeal.  It then makes the inexplicable leap in logic arguing that because the parties did not move for a stay, the rates this court expressly found unlawful "remain lawful and valid

---

[30]     IPUC Brief at p. 31.

through the judicial review process."[31]  The IPUC's argument is contrary to established principles of law and should be rejected.

Seeking a stay or an injunction may in certain cases be appropriate so that a party can avoid irreparable harm that may occur during the pendency of judicial review.  However, there is no *legal requirement* that parties must seek a stay or injunction or be precluded from receiving any remedy for the harm experienced.  At most, failure to seek an injunction or a stay may mean, as the IPUC points out, that an appealing party "*risks* losing its ability to realize the benefits of a successful appeal."[32]  But this risk only arises when the remedy is so unique that the petitioner suffers irreparable harm due to the passage of time.  There is no such risk in the present case – monetary damages for the specifically identified loss to Preference Customers will suffice.

As argued in the Opening Briefs and in BPA's Answering Brief in this appeal, petitioners have not lost the availability of remedies from their original appeal.  BPA has the authority, and is compelled by this court's remand, to implement refunds for identified overcharges to Preference Customers.  In this case, BPA crafted a tenable remedy in the form of calculating a refund to

---

[31]  *Id.* at 32.

[32]  *Id.* at 33 (quoting *Holloway v. United* States, 789 F.2d 1372, 1374 (9th Cir. 1986) (emphasis added).

Preference Customers, and effecting that refund through a "Lookback."[33]  The

IPUC's argument that BPA should not be *allowed* to make refunds because the

Preference Customers failed to seek a stay stretches the concept of a stay beyond

any reasonable application.  If the court were to adopt the IPUC's argument,

parties in any case in which an alleged overpayment had been made would be

required to seek injunctive relief – an absurd and inefficient result.  The court

should reject the IPUC's argument, and maintain the application of stays and

injunctions as tools that may be used by parties to avoid irreparable harm.  Such

tools are not required in order to secure remedies in the form of monetary damages

that are within the authority of the court to provide.

### 2. A Stay Was Not Practical and Would Not Have Been Granted Under the Facts in this Case

Even if the IPUC were correct that a party must seek a stay in order to be

entitled to a remedy, in the instant case a stay was impractical and almost certainly

would not have been granted in any event.

BPA's rate case procedures provide no method to seek a stay of rates during

the pendency of an appeal.  Even if a party could have moved for a stay, BPA

would likely have refused because BPA's rates must be implemented for it to

collect the revenues required to conduct its business of supplying electric power.

---

[33]  APAC asserts in this case that the tenable remedy proposed by BPA is not sufficient in amount or in the certainty of repayment.

At hearing in BPA's underlying proceeding, BPA's Rates Manager explained the difficulties that would have been associated with a stay:

> *Q. Are any of the three of you [witnesses] aware of any procedures that might be available to stay BPA's rates once they've been adopted and approved on an interim basis by FERC?*
>
> A. Your question goes to the stay of implementation of a set of rates?
>
> *Q. Yes.*
>
> A. That was one that I don't think any of us are aware of and we're not really sure how it would be done.
>
> *Q. And if, in fact, the rates were stayed, how would that affect Bonneville's ability and obligation to recover its costs?*
>
> A. In my understanding of what a stay in that sense would mean, it would have left us without any rates that we could use to charge. Given that the predecessor rates had expired, we would not have been in a position to have any rates and would have obviously seriously jeopardized Bonneville's ability to recover any costs.[34]

The IPUC's argument that Preference Customers should have sought a stay does not consider the impact of a stay on BPA. A stay would have prevented BPA from implementing the rates approved by FERC to recover BPA's total costs, which would have prevented BPA from collecting any revenue. The IPUC fails to explain how BPA would have provided services, including the payment of any REP benefits to Idaho Power and other exchange customers. As BPA's Rates

---

[34]     *Hearing Transcript* (May 27, 2008), pp. 39-40. ( R.A.R. 93529 – 93530.)

Manager testified, BPA's rates are approved for only a limited term.[35] And, even if BPA could continue to bill under its prior rates while the stay was in effect, there would be a mismatch between the old, stale rates and current costs. BPA's potential inability to cover its operating costs clearly threatens the public interest in BPA's long-term solvency. It is certain that BPA would have, and likely that a court would have considered such a threat to BPA's solvency, given the indeterminant time period required for appeals, to be so serious that it would not have granted a stay.

The IPUC argues a stay would have been "feasible," asserting that BPA obtained a stay of its rates with FERC.[36] However, the IPUC mischaracterizes the action taken by BPA. The stay obtained by BPA suspended FERC's further *final review* of BPA rates that had already gone into effect on an interim basis. Contrary to the IPUC's assertion, BPA did not seek a stay of the effectiveness of its rates.[37] Effectively, BPA asked FERC to stay any further review while BPA determined if the rates needed modification. During the FERC stay, BPA continued to bill

---

[35]  *2002 Final Rate Proposal, Administrator's Final Record of Decision, Appendix 1: 2002 Wholesale Power Rate Schedules*, R.A.R. 1539 *et seq.*

[36]  IPUC Brief at 32.

[37]  *See* R.A.R. 062327 ("BPA requested a stay of FERC's continuing review to allow BPA to correct a minor calculation error. Prior to the resolution of that issue, the Ninth Circuit issued two opinions related to BPA's rates, whereupon BPA asked FERC to extend the stay of its review while BPA determined how to respond to the Court's rulings.").

-19-

customers using the interim rates, and the rates were never stayed.  The type of stay the IPUC argues should have been sought would have prevented BPA from billing under the newly proposed rates.

A reviewing court would most likely not have granted a stay, both because there was no irreparable harm in BPA's charging of the new rates, and because a stay would have been contrary to the public interest.  To determine whether to issue a stay, a court must analyze the likelihood of success on the merits, irreparable harm, substantial harm to other interested parties and the public interest.[38]

First, here is no irreparable harm, as a full refund of the overpayments[39] would remedy petitioners' injury.  This court has held in several cases that it can order a retroactive refund or adjustment to rates in order to provide a remedy to parties alleging an error in BPA's rates.  In *Public Utility Commission of Oregon v. BPA*, this court refused to interfere with BPA's approval of rates, finding that it could either order a refund or retroactive adjustment of rates to cure any defects.[40] Similarly, in *Pub. Util. Comm. of State of Cal. v. FERC*,[41] this court explained that petitioners challenging a BPA rate are "fully protected" from harm they may

---

[38]  *Special Counsel v. Campbell*, 58 MSPR 455 (MSPB 1993).

[39]  Immediately or with adequate interest.

[40]  767 F.2d 622, 630 (1985).

[41]  814 F.2d 560, 562 (9th Cir. 1987).

experience during the pendency of a claim because if an adopted rate proves unlawful, the court has the ability to "provide retroactive refunds if necessary."

The absence of irreparable harm is an important difference between the current case and the *Holladay* case cited by the IPUC. In *Holladay*, the petitioner's house was sold during the pendency of the case, and the transfer of the property could not be later remedied by the court. The court stated that only by seeking a stay could the petitioners have prevented that irreparable damage.

The IPUC also argues a stay should have been filed because it would have "alerted the Washington, Oregon and Idaho Commissions that REP benefits may change, and they might have ordered IOUs to put a portion in escrow."[42] The utility commissions, however, were fully aware of the challenges to the REP Settlement Agreements. The OPUC and the Washington Utilities and Transportation Commission intervened in the *PGE* case.[43] These parties obviously had notice of the pending appeals and challenges to the level of payments under the Residential Exchange program. No harm was done to the Commissions by the Preference Customers' failure to seek a stay. They had full knowledge of the

---

[42]    IPUC Brief at p. 34.

[43]    The Washington Utilities and Transportation Commission was an intervenor in Case 01-70041, and the Oregon PUC was an intervenor in four cases: 01-70003, 01-70005, 01-70010, and 01-70012.

challenge, and presumably applied prudent judgment in their regulation of the utilities' interim treatment of the disputed payments.

Finally, it is ironic the IPUC argues for a stay when it argues elsewhere the residential exchange payments are sacrosanct and must be paid for the benefit of residential customers regardless of the interests of other parties in obtaining remedies for past harms.  Similarly, the IPUC argues it is unlawful for BPA to collect Lookback amounts from the IOUs, and presumably seeks a remedy for such collection, but the IPUC did not seek a stay to prevent such actions.

For all of these reasons, the court should reject the IPUC's invitation to attach extraordinary legal consequences to the failure of the original petitioners to have obtained a stay of the rates in the WP-02 case.

### C. Firm Sales To IOUs Were Properly Included In The Lookback Amount

APAC supports the arguments of BPA that "BPA Properly Included the Firm Power Sales Component of the REP Settlement Agreements in the Lookback Calculation," made in Section III.A, subsections 1 – 6, of its Revised Answering Brief, pp. 66 – 77, filed in this matter on January 25, 2010.  APAC also supports the arguments on this issue in the Brief of Intervenor-Respondents Western Public Agency Group, *et al.*, pp. 8-18, filed February 25, 2010.

**D.    Incorporation of Other Brief**

Pursuant to this court's Order dated June 4, 2009, this case will be calendared before the same panel that considers a related set of dockets consolidated as *Idaho Public Utilities Commission v. Bonneville Power Admin.,* Consolidated Cases 08-74927 *et al.* (*IPUC*). That order allowed parties to this case to incorporate by reference portions of briefs filed in the *IPUC* case. APAC has filed an intervenor's brief in the IPUC case, which it hereby incorporates by reference in this case. Specifically, the APAC brief in that case argued:

1. BPA had authority to include Section 20 in the RPSA agreements to provide for offsets against REP benefits to fund refunds to Preference Customers;

2. The Invalidity Clause of the REP Settlement Agreements could not be enforced to allow the IOUs to retain all payments received under that illegal agreement.

3. The deemer balances were properly enforced by BPA in Section 11 of the RPSA Agreements as offsets against REP benefits otherwise payable.

The arguments made in the RPSA brief on those issues are hereby incorporated by reference in this brief.

## VIII. CONCLUSION

BPA's calculation of the amounts it illegally collected from Preference Customers and the refund of those amounts is necessary to comply with this court's remand and to correct the error the court found. Such remedy does not violate the prohibition against retroactive ratemaking.

There was no error and no legal consequence to the failure of the original petitioners to seek a stay of rates in the WP-02 case.

Respectfully submitted,

Michael Alcantar
Donald Brookhyser
Alcantar & Kahl, LLP

Michael Kunselman
Alston & Bird

Judith Endejan
Graham & Dunn

Counsel for
Association of Public Agency Customers

February 25, 2010

-24-

**CIRCUIT FORM 8**
**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**FED.R.APP.P. 32(A)(7)(C) AND CIRCUIT RULE 32-1**
**FOR CASE 08-74725**

**Form Must Be Signed by Attorney or Unrepresented Litigant** *and attached to the back of each copy of the brief*

I certify that (check the appropriate option(s)):

**X** 1. Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

- Proportionally spaced, has typeface of 14 points or more and contains approximately 5218 words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words)

**or is**

- Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

2. The attached brief is **not** subject to the type-volume limitations of Fed.R.App. P. 32(a)(7)(C) because

- This brief complies with Fed.R.App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

- This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

- Proportionally spaced, has typeface of 14 points or more and contains _____ words,

**or is**

- Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text.

_____ 3.    Briefs in Capital Cases

- This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 **and is**

  - Proportionally spaced, has typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words),

  **or is**

  - Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third brief field in cross-appeals must not exceed 75 pates or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

_____ 4.    Amicus Briefs.

- Pursuant to Fed.R.App.P. 29(d) and 9th Circuit R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7000 words or less,

**or is**

- Monospaced, has 10.5 or fewer characters per inch and contains not more than 7000 words or 650 lines of text,

**or is**

- **Not** subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P 32(a)(1)(5).

Dated:  February 25, 2010

_Donald Brookhyser_

_____

Donald Brookhyser

# PROOF OF SERVICE

I, Kari Harteloo, certify that I have electronically filed the *INTERVENOR'S BRIEF OF THE ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, ET AL.* with the Clerk of the Court for the United States Court of Appeal for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated February 25, 2010 at Portland, Oregon.

Kari Harteloo

Kari Harteloo

## Consolidated Cases 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113, 08-75130, 08-75132, 08-75133, 08-75161, 08-75165 APAC v. BPA Service List

Mark R. Thompson
Public Power Council
825 NE Multnomah Street, Ste. 1225
Portland, Oregon 97232
mthompson@ppcpdx.org

Donald Howell
Idaho Public Commission
472 W Washington Street
Boise ID  83720-0074
Don.howell@puc.idaho.gov

Erick Johnson
R. Erick Johnson PC
5285 SW Meadows Road, Suite 230
Lake Oswego, OR 97035
Ejohnson@REJPC.com

David Adler
69312 Camp Polk Road
Sisters, OR  97759
djadler@bpa.gov

Michael G. Andrea
Avista Corporation
Room MSC-23
1411 East Mission Avenue
Spokane, WA 99252-2600
Michael.andrea@avista.com

Jason Kuzma
Perkins Coie, LLP
Suite 700
10885 NE Fourth Street
Bellevue, WA 98004
jkuzma@perkinscoie.com

Natalie L. Hocken
PacifiCorp
825 NE Multnomah, Suite 2000
Portland, OR 97232
Natalie.hocken@pacificorp.com

Blair Strong
Paine Hamblen LLP
717 West Sprague Avenue, #1200
Spokane, WA 99201-3505
r.blair.strong@painehamblen.com

David Hill
Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585
David.hill@doe.gov

Stephen Odell
Office of the US Attorney
Mark O. Hatfield US Courthouse
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Steve.odell@usdoj.gov

Kurt R. Casad
Bonneville Power Administration
Office of General Counsel
PO Box 3621
905 NE 11th Avenue
Portland, OR 97208-3621
krcasad@bpa.gov

Paul Murphy
Murphy & Buchal LLP
2000 SW 1st Avenue, Suite 320
Portland, OR. 97201
pmurphy@mbllp.com

Donald T. Trotter
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 40128
Olympia, WA 98504-0128
dtrotter@utc.wa.gov

Engel Lee
SEATTLE CITY ATTORNEY'S OFFICE
4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
engel.lee@seattle.gov

Eric Lee Christensen
SNOHOMISH COUNTY PUD #1
2320 California St.
P.O. Box 1107
Everett, WA 98206-1107
elchristensen@snopud.com

Gillian Catriona McCracken
Citizens' Utility Board of Oregon (CUB)
Suite 308
610 SW Broadway
Portland, OR 97205
catriona@oregoncub.org

Jay Thomas Waldron
Schwabe, Williamson & Wyatt
Suites 1500-2000
1211 SW Fifth Avenue
Portland, OR 97204
jwaldron@schwabe.com

Joel C. Merkel
Merkel Law Office
1001 Fourth Avenue
Suite 4050
Seattle, WA 98514
joel@merkellaw.com

M. Joseph Sloan
OFFICE OF THE CITY ATTORNEY
Dept. of Public Utilities-Administration
3628 South 35th Street
P.O. Box 11007
Tacoma, WA 98411
joseph.sloan@cityoftacoma.org

Michael Chester Dotten
13643 Melrose Place
Lake Oswego, OR 97035
mdotten@martenlaw.com

Richard Allen Greene
BONNEVILLE POWER ADMINISTRATION
Office of General Counsel - LP-7
905 NE 11th Avenue
Portland, OR 97232
ragreene@bpa.gov

Sara Kobak
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
Suites 1500-1900
1211 SW 5th Ave.
Portland, OR 97204-3795
skobak@schwabe.com

Scott G. Seidman
TONKON TORP, LLP
Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
scott.seidman@tonkon.com

William J. Ohle
Schwabe, Williamson & Wyatt
Suites 1500-2000
1211 SW Fifth Avenue
Portland, OR 97204
wohle@schwabe.com

Thomas M. Grim
Cable Huston Benedict
1001 SW Fifth Avenue
Suite 2000
Portland OR  97204-1136
tgrim@cablehuston.com

Dan Bagatell
Perkins Coie
2901 N Central Avenue
Phoenix AZ  85012-2788
dbagatell@perkinscoie.com

Terence Mundorf
Marsh Mundorf Pratt Sullivan
Creekside Professional Center
Suite 203
16504 Ninth Avenue SE
Mill Creek WA  98012
terrym@millcreeklaw.com

Raymond Kindley
Cable Huston Benedict
1001 SW Fifth Avenue
Suite 2000
Portland OR  97204-1136
rkindley@cablehuston.com

Ryan Flynn
PacifiCorp/Pacific Power
Suite 1800
825 NE Multnomah
Portland OR  97232
Ryan.flynn@pacificorp.com

Denise Fjordbeck
AGOR – Oregon Attorney General's Office
400 Justice Building
1162 Court Street NE
Salem OR  97301-4096
Denise.fjordbeck@doj.state.or.us

Stephanie Andrus
AGOR – Oregon Attorney General's Office
400 Justice Building
1162 Court Street NE
Salem OR  97301-4096
Stephanie.andrus@doj.state.or.us

Richard Lorenz
Cable Huston
1001 SW Fifth Avenue
Suite 2000
Portland OR  97204-1136
rloorenz@cablehuston.com