Nos. 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 0875113, 08-75130, 08-75132, 08-75133, 08-75161 & 08-75165

_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

THE ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, *et al.,*

Petitioners,

v.

BONNEVILLE POWER ADMINISTRATION,

Respondent.

REPLY BRIEF

ON PETITION FOR REVIEW UNDER THE
NORTHWEST POWER ACT

JOHN R. KROGER
Attorney General
JEROME LIDZ
Solicitor General
STEPHANIE S. ANDRUS
Senior Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402

Attorneys for Petitioner
Public Utility Commission of Oregon

_____
_____

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

A. BPA's arguments. ..................................................................4

    1. The OPUC concedes that BPA does not require express Congressional authority to adopt a rule to refund money to preference customers................................. 4

    2. Preference customers are not deprived of a remedy under the OPUC's analysis.................................. 6

    3. BPA's reliance on this Court's opinion in *Newman* for the proposition that this Court can order BPA to adopt a retroactive rule is misplaced. ............................. 7

        a. A judicial remand is not a substitute for Congressional authority to adopt retroactive rules. ............................................................. 7

        b. This Court's opinion in *Newman* is inapposite because it involved a class action lawsuit brought under a different statute. ............................ 10

        c. The relief sought by the class actions plaintiffs in *Newman* did not require retroactive rulemaking............................................................. 11

    4. BPA's retroactive rule is not authorized under an exception to the rule against retroactive *ratemaking*.......... 12

B. APAC arguments. ......................................................................16

    1. The prohibition on retroactive rulemaking stems from the Administrative Procedures Act and the rule against retroactive ratemaking stems from the Interstate Commerce Act. ....................................... 16

    2. Not all ratemaking is legislative. ....................................... 18

C. Preference customer arguments. ...................................................20

i

1.    The preference customers' reliance on *Callery* for their assertion BPA has authority to surcharge investor-owned utilities is misplaced for the reasons discussed above................................................................. 20

2.    The preference customers' reliance on three of this Court's opinions stating that it may order BPA to provide refunds to customers do not address whether BPA can adopt a retroactive rule to surcharge customers. .......................................................... 22

CONCLUSION................................................................25

# TABLE OF AUTHORITIES

## Cases Cited

*Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co., et al.,*
284 U.S. 370, 52 S. Ct. 183, 76 L.Ed 348 (1932) ............................. 16, 18

*Atlantic Richfield Co. v. Bonneville Power Admin.,*
818 F.2d 701 (9th Cir. 1987) ........................................................................4

*Bowen v. Georgetown Univ. Hosp,*
488 U.S. 204, 109 S. Ct. 468, 102 L.Ed. 2d 493 (1988) .............................
.................................................................................. 3, 4, 7-9, 13, 17, 21

*Cities of Anaheim, et al. v. FERC,*
723 F.2d 656 (1984) ..................................................................................23

*Georgetown University Hospital, et al., v. Bowen,*
821 F.2d 750 (D.C.Cir. 1987) ......................................................................8

*Golden Northwest Aluminum v. BPA,*
501 F.3d 1037 (9th Cir. 2007) ......................................................................7

*Kankamalage v. INS,*
335 F.3d 858 (9th Cir. 2003) .............................................................. 2, 5, 12

*Landgraf v. USI Film Products, et al.,*
511 U.S. 244, 114 S. Ct. 1483, 128 L.Ed. 2d 229 (1994) ............... 2, 5, 12

*Livermore v. Heckler,*
743 F.2d 1396 (9th Cir. 1984) ........................................................ 3, 10, 11

ii

*Natural Gas Clearinghouse v. FERC*,
965 F.2d 1066 (D.C.Cir. 1992) .......................................... 3, 12, 13, 17, 19

*Newman v. Apfel*,
223 F.3d 937 (9th Cir. 2000) ................................................ 3, 4, 10, 11, 21

*Oregon Pub. Util. Comm'r v. Bonneville Power Admin.*,
767 F.2d 630 (9th Cir. 1985) .................................................. 4, 22, 23, 24

*OXY USA, Inc. v. FERC*,
64 F.3d 679 (D.C. Cir. 1995) ....................................................... 3, 12, 13

*Pub. Util. Comm. of State of Cal. v. FERC*,
814 F.2d 560 (9th Cir. 1987) ........................................................ 4, 22, 24

*Public Service Comm'n v. Federal Power Comm'n*,
361 U.S. 195 .......................................................................................14

*Public Utilities Com'n of State of Cal. v. FERC*,
988 F.2d 154 (D.C. Cir. 1993) .................................................................3

*SEC v. Chenery Corp. et al*,
332 U.S. 194, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947) ........ 4, 13, 14, 15, 17

*Trinity County Pub. Util. Dist. v. Harrington*,
781 F.2d 163 (9th Cir. 1986) ...................................................................6

*United Gas Improvement Co. et al., v. Callery*, ("*Callery*")
382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.3d (1965) ...... 3, 4, 13, 14, 15, 20, 21

*United Gas Improvement Company v. FPC*,
269 F.2d 865 (1959),
*vacated Public Service Comm'n v. Federal Power Comm'n*,
361 U.S. 195, 80 S.Ct. 292 (1959) ...........................................................14

*United States v. City of Fulton*,
475 U.S. 657, 106 S. Ct. 1422, 89 L.Ed. 2d 661 (1986) .........................15

*Verizon Telephone Companies, et al. v. FCC*,
296 F.2d 1098 (D.C.Cir. 2001) ...............................................................19

iii

## Constitutional & Statutory Provisions

16 U.S.C. § 824, *et seq.* (1988)...........................................................................17

16 U.S.C. § 839c(f)...............................................................................................6

16 U.S.C. § 839e(b)(2)..........................................................................................6

28 U.S.C. § 1651(a) (1982)..................................................................................23

42 U.S.C. § 1381-1383c.......................................................................................10

42 U.S.C. § 405(g)...............................................................................................11

## OTHER AUTHORITIES

*United States Department of Energy – Southeastern Power Administration*,
    55 FERC P 61, 045 (1991 WL 518181).....................................................16

**REPLY BRIEF**
_____

**INTRODUCTION**

The Public Utility Commission of Oregon (OPUC) challenges the "Lookback" adopted by the Bonneville Power Administration (BPA) on the ground it is a retroactive rule for which BPA does not have Congressional authority. The Lookback increases the rate for power exchanged by investor-owned utilities between 2002 and 2007 in the Residential Exchange Program (REP) and exacts payment for that increased rate by reducing future REP benefits that will be owed to the investor-owned utilities under the Pacific Northwest Electric Power Planning and Conservation Act (Northwest Power Act). Under the Lookback the additional charges for power previously exchanged by the investor-owned utilities is used to refund overcharges paid by consumer-owned utilities from 2002-2007.

Arguments made by BPA in its answering brief identify a flaw in arguments the OPUC presented in its opening brief. The provisions of the Lookback refunding overcharges to preference customers are not "retroactive" under the test the United States Supreme Court applies to determine whether a statute has retroactive effect and that this Court has adopted to determine whether agency regulations have retroactive effect. *See e.g., Landgraf v. USI Film Products, et al.,* 511 U.S. 244, 280, 114 S. Ct. 1483, 1505, 128 L.Ed. 2d

2

229 (1994), and *Kankamalage v. INS*, 335 F.3d 858 (9th Cir. 2003).

Accordingly, the OPUC concedes that the prohibition on retroactive rulemaking

does not preclude BPA from adopting a rule under which BPA refunds money

to preference customers for past overcharges.

However, the OPUC's concession does not apply to the provisions of the

Lookback that retroactively increase the rate for power investor-owned utilities

exchanged between 2002 and 2007 and exact payment for that rate increase by

reducing future REP benefits. Because these provisions of the Lookback are

retroactive, BPA must have express Congressional authority to adopt them.

Because BPA has no such authority, this Court should invalidate these

retroactive provisions of the Lookback.

BPA, allied consumer-owned utilities,[1] and Associated Public Agency

Customers (APAC) disagree with the OPUC's contention that BPA must have

express congressional authority to adopt the retroactive provisions of the

Lookback. All these parties rely on the axiom that an agency, like a court, may

undo what was unlawfully done by a prior order and to varying degrees,

---

[1] These customers filed the "Brief of Intervenor-Respondents Western Public Agencies Group, Public Utility District No. 1 of Cowlitz County, Public Power Council, The City of Seattle, Northwest Requirements Utilities, Public Utility District No. 1 of Snohomish County, and Tillamook People's Utility District." The OPUC will refer to these customers as they refer to themselves, as "preference customers." (Pref. Cust. Br. 1).

3

conflate the prohibition on retroactive rulemaking discussed in *Bowen v.*

*Georgetown Univ. Hosp,* 488 U.S. 204, 109 S. Ct. 468, 102 L.Ed. 2d 493

(1988), with the "rule against retroactive ratemaking" discussed in cases such as

*Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066 (D.C.Cir. 1992).  In

summary, these parties argue:

**BPA**

- The Lookback Proposal does not impair rights, increase liability or impose new duties;
- Application of the prohibition would deprive preference customers of a remedy;
- The agency does not need Congressional authority to adopt a retroactive rule when acting "in response to binding judicial orders. *Newman v. Apfel,* 223 F.3d 937, 942 (9th Cir. 2000); and
- The Lookback Proposal falls within the exception to the rule against retroactive **ratemaking**.  *OXY USA, Inc. v. FERC*, 64 F.3d 679, 699 (D.C. Cir. 1995).  (BPA Br. 45-51).

**APAC**

- An agency is permitted to implement specific retroactive adjustments in order to effectuate a judicial decision reversing its original order.  *United Gas Improvement Co. et al., v. Callery*, ("*Callery*") 382 U.S. 223, 229, 86 S.Ct. 360, 15 L.Ed.3d (1965); *Public Utilities Com'n of State of Cal. v. FERC*, 988 F.2d 154 (D.C. Cir. 1993); and *Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066 (D.C. Cir. 1992);
- The prohibition on retroactive rulemaking discussed in *Bowen*, 488 U.S. 204, 109 S. Ct. 468, only applies when an agency is acting *sua sponte*;
- The Court can order an agency to impose retroactive relief.  *Newman*, 223 F.3d at 942; and *Livermore v. Heckler*, 743 F.2d 1396 (9th Cir. 1984);
- There is no meaningful difference between the rule against retroactive ratemaking and the prohibition on retroactive rulemaking, and thus, the exceptions to the rule against retroactive

4

ratemaking apply to BPA's adoption of a retroactive rule. (APAC Br. 3-15).

## Preference Customers

- An administrative agency may "undo what [was] wrongfully done by virtue of [a prior] order." *Callery,* 382 U.S. at 223; and *Newman*, 223 F.3d at 942;
- This Court has expressly held in multiple cases that legal errors in BPA rate determinations can and should result in retroactive refunds of amounts paid to injured parties, *Pub. Util. Com. of State of Cal. v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987); *Oregon Pub. Util. Com'r v. Bonneville Power Admin.*, 767 F.2d 622, 639 (9th Cir. 1985); and *Atlantic Richfield Co. v. Bonneville Power Admin.*, 818 F.2d 701, 705 (9th Cir. 1987);
- *Bowen* is distinguishable from this case because in this case, BPA is taking action to conform its earlier erroneous actions to law whereas in *Bowen*, the agency adopted a retroactive rule to frustrate a court's prior decision. (Pref. Cust. Br. 18-22).

As discussed in more detail below, there is no judicial-remand exception to the prohibition on retroactive rulemaking and parties' reliance on court opinions stemming from the United States Supreme Court's opinion in *SEC v. Chenery Corp. et al,* 332 U.S. 194, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947), which addressed an agency's adjudicatory authority, is misplaced.

## A. BPA's arguments.

### 1. The OPUC concedes that BPA does not require express Congressional authority to adopt a rule to refund money to preference customers.

As noted above, the OPUC agrees, in part, with one of BPA's contentions and accordingly, modifies the position taken in its opening brief.

5

The provisions of the Lookback under which BPA returns money to preference customers to compensate them for past overcharges are not "retroactive" under the test to determine retroactivity adopted by the United States Supreme Court. *See e.g., Landgraf*, 511 U.S. at 280, 114 S. Ct. at 1505. Under this test a statute has retroactive effect if it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* This Court has applied this test to determine whether an agency regulation is retroactive. *See e.g., Kankamalage*, 335 F.3d at 862. Because the Lookback provisions refunding money to preference customers do not impair the preference customers' rights, increase their liability for past conduct, or impose new duties with respect to transactions already completed, BPA does not require express Congressional authority to adopt them.

The same is not true of the Lookback provisions increasing the rate for power exchanged by investor-owned utilities from 2002-2007and exacting payment for that increased rate by reducing future REP benefits. These provisions impose new duties for transactions already completed and are retroactive. *See e.g., Landgraf,* 511 U.S. at 280, 114 S.Ct at 1505. BPA must have express Congressional authority to adopt these provisions of the Lookback. Because BPA has no such authority, the provisions are unlawful.

6

### 2. Preference customers are not deprived of a remedy under the OPUC's analysis.

BPA's argument that preference customers are deprived of a remedy under the OPUC's retroactive rule challenge is no longer applicable in light of the OPUC's concession. While BPA cannot use the Lookback to fund the refunds, it can use other sources of revenue, such as revenue from sales of surplus power under 16 U.S.C. § 839c(f).

To the extent that preference customers and BPA argue that BPA is precluded from using a revenue source other than surcharges on previously exchanged power to provide refunds to preference customers, the argument is incorrect. The possibility of indirect impacts on the rates of BPA's preference customers does not mean that BPA is precluded from funding any refunds from BPA's reserves, surplus sales, or other sources. Preference customers are not shielded from all REP costs, but only are shielded by the rate ceiling protection that §7(b)(2) of the Northwest Power Act provides. 16 U.S.C. § 839e(b)(2). Rate protection in § 7(b)(2) is determined by a complicated statutory calculation and does not mean that preference customers are protected against any possible indirect impacts of the REP. *See Trinity County Pub. Util. Dist. v. Harrington,* 781 F.2d 163, 166 (9th Cir. 1986) (priority to power does not mean "a preferential rate in addition to preferential power allocation").

7

**3.** **BPA's reliance on this Court's opinion in *Newman* for the proposition that this Court can order BPA to adopt a retroactive rule is misplaced.**

BPA relies on this Court's opinion in *Newman* for the proposition that it needs no express Congressional authority to adopt a retroactive rule when responding to "binding judicial orders." (BPA Br. 46). BPA asserts that the Court's ordering language in *Golden Northwest Aluminum v. BPA,* 501 F.3d 1037, 1045 (9th Cir. 2007), remanding the case to BPA with instruction to "set rates in accordance with this opinion," authorizes BPA to adopt a retroactive rule to remedy the errors identified in that case. BPA argues that the cases on which the OPUC relies to demonstrate that administrative agencies must have congressional authority to adopt a retroactive rule are inapposite because in those cases, the agencies were not responding to judicial orders. (BPA Br. 46).

**a.** **A judicial remand is not a substitute for Congressional authority to adopt retroactive rules.**

BPA's contention that the judiciary may authorize retroactive rulemaking by adding the word "remand" to judicial orders is inconsistent with Justice Scalia's concurring opinion in *Bowen,* 488 U.S. 204, 109 S. Ct. 468 (Scalia, J. concurring). In that opinion, Justice Scalia addressed the [Health and Human Services] Secretary's contention that "the evils generally associated with retroactivity do not apply to reasonable 'curative' rulemaking—that is the correction of a mistake in an earlier rulemaking proceeding[,]" because the

respondents in the case had ample notice of the standard that would be applied under the re-issued rules. *Id.* at 225. In rejecting that argument, Justice Scalia noted that he "fully agreed" with the reasoning of a lower court, the D.C. Circuit Court, that accepting the Secretary's argument would "make a mockery" of the APA. *Id.* The D.C. Circuit Court stated:

> The Secretary's suggestion that retroactive rulemaking is permissible to remedy a procedural defect in a rule would, if accepted, make a mockery of the provisions of the APA. Obviously, agencies would be free to violate the rulemaking requirements of the APA with impunity if, upon invalidation of a rule, they were free to "reissue" that rule on a retroactive basis. If an agency rule is invalidated on procedural grounds, the agency must, of course, be given an opportunity to correct the procedural defect and promulgate a new rule. * * * However, both the express terms of the APA and the integrity of the rulemaking process demand that the corrected rule, like all other legislative rules, be prospective in effect only. *Georgetown University Hospital, et al., v. Bowen*, 821 F.2d 750, 758 (D.C.Cir. 1987)(citation omitted).

As BPA notes, the rules at issue in *Bowen* were not adopted immediately after the original rules were invalidated or, in response to a judicial order to promulgate new rules. However, the statements by Justice Scalia do not support the conclusion that the Supreme Court would have reached a different result had they been. Under BPA's reasoning, the U.S. Supreme Court would have affirmed the Secretary's retroactive rules had the court that invalidated the original rules remanded them to the Secretary with instructions to adopt new rules. In other words, under BPA's interpretation of *Bowen,* an agency that *sua*

*sponte* adopts retroactive rules to replace those invalidated by a court "makes a mockery" of the APA, but an agency that adopts such rules to replace rules that have been invalidated by a court, *and remanded,* does not.

Furthermore, BPA's interpretation that an agency may adopt retroactive rules if a court remands invalidated rules to an agency is not supported by the limitations that Congress has placed on agencies' authority to adopt retroactive rules. Justice Scalia noted these limitations in his concurring opinion in *Bowen*,

> [E]ven though Congress wields such a power [to adopt retroactive legislation] itself, it has been unwilling to confer it upon the agencies. Given the traditional attitude towards retroactive legislation, the regime established by the APA is an entirely reasonable one: Where quasi-legislative action is required, an agency cannot act with retroactive effect without some special congressional authorization. That is what the APA says, and there is no reason to think Congress did not mean it. 488 U.S. at 224 (Scalia, J. concurring).

Under BPA's reasoning, an agency has authority to adopt retroactive rules when Congress has given it special authorization, or when any federal judge remands invalidated rules to the agency. It makes no sense that while Congress has itself only authorized agencies to adopt retroactive rules in limited circumstances; it intended that any federal court could dole out this authority simply by adding the word "remand" to its opinion.

**b.** **This Court's opinion in *Newman* is inapposite because it involved a class action lawsuit brought under a different statute.**

The circumstances in *Newman* are distinct from the circumstances presented in this case and thus, *Newman* is not dispositive. In *Newman,* plaintiffs brought a class action lawsuit against the Commissioner of Social Security for invalidation of a regulation and for payment of Supplemental Security Income (SSI) benefits under 42 U.S.C. §§1381-1383c, that would have been owed had the Commissioner adopted a valid regulation regarding retrospective monthly accounting to true up for known changes to recipients' income. *Newman,* 223 F.3d at 939. The Commissioner argued that the plaintiffs did not have standing because the Commissioner had no authority to issue a retroactive rule under which benefits could be calculated. The Court dismissed this assertion, noting that the Court had authority to order retroactive relief to make the plaintiffs whole, and citing what it described as a comparable case, *Livermore v. Heckler*, 743 F.2d 1396 (9th Cir. 1984), in support of this conclusion.

An examination of the Court's opinion in *Livermore* reveals the distinction between the circumstances underlying this appeal and *Newman.* Like the plaintiffs in *Newman*, the plaintiffs in *Livermore* received SSI under 42 U.S.C. §§ 1381-1383c. In *Livermore,* the Court affirmed the district court's

11

conclusion that the Secretary of Health and Human Services had erroneously interpreted a section of the SSI statute and ordered the Secretary to recalculate benefits based on a correct interpretation of the statute and implement the statute correctly going forward. The Secretary argued that the sovereign immunity of the United States precluded any relief other than prospective relief. The Court disagreed, noting that 42 U.S.C. 405(g), the section of the Social Security Act authorizing judicial review, is a broad waiver of sovereign immunity authorizing injunctive and other relief. *Livermore,* 734 F.2d at 1405.

This case is not a class action in which plaintiffs seek injunctive relief. It is a direct appeal of an agency rulemaking decision. This Court's conclusion that the federal district court has authority to order an agency to recalculate benefits previously calculated under an erroneous rule for plaintiffs in a class action suit brought under Title 42 of the United States Code does not compel the conclusion that this Court's order remanding to BPA invalidated rules gave BPA authority to issue a retroactive rule

### c. The relief sought by the class actions plaintiffs in *Newman* did not require retroactive rulemaking.

Neither *Newman* nor *Livermore* presented a retroactive rulemaking issue. The recalculations sought by the class action plaintiffs in both cases would not have been retroactive rulemaking because the rules would not have impaired rights a party possessed when he acted, increase[d] a party's liability for post

12

conduct, or imposed new duties with respect to transactions already completed." *See e.g., Landgraf*, 511 U.S. at 270, 114 S. Ct. at 1499. *See also, Kankamalage*, 335 F.3d at 862 (Court applying test to determine whether *regulation* is retroactive). Accordingly, the opinions in these cases do not compel any particular conclusion as to whether this Court can order an agency to adopt a retroactive rule.

> **4.     BPA's retroactive rule is not authorized under an exception to the rule against retroactive *ratemaking*.**

BPA asserts that the prohibition on retroactive rulemaking does not preclude BPA from adopting a rule under which BPA increases the rate for power exchanged by investor-owned utilities from 2002 to 2007 because the circumstances fall within an exception to the prohibition on retroactive *ratemaking*. The OPUC's arguments are not based on the prohibition on retroactive ratemaking and thus, whether the circumstances in this case fall within one of the exceptions to application of that doctrine is not relevant.

BPA relies on *OXY USA, Inc.*, 64 F.3d 679, and *Natural Gas Clearinghouse*, 965 F.2d 1066, for the proposition that BPA is not precluded from adopting a rule that increases the rate of power exchanged during a previous period because as the Court noted in these cases, "[t]he rule against retroactive ratemaking * * * 'does not extend to cases in which [customers] are on adequate notice that resolution of some specific issue may cause a later

adjustment to the rate being collected at the time of service.'" Because these cases do not address the prohibition against retroactive rulemaking, BPA's reliance on them is misplaced.

The Court's opinions in *OXY USA, Inc.* and *Natural Gas Clearinghouse* rely on the United States Supreme Court's opinion in *Callery*, in which the Court relied on its previous opinion in *SEC v. Chenery*, to conclude that FERC had authority to issue refunds on judicial remand because "[a]n agency, like a court, can undo what is wrongfully done by virtue of its order." *Callery*, 382 U.S. at 229, 86 S. Ct. at 364.

As discussed in the OPUC's opening brief, *SEC v. Chenery* addressed an agency's remedial authority when exercising its adjudicatory authority. In his concurring opinion in *Bowen,* Justice Scalia noted that reliance on the Court's holding in *SEC v. Chenery* for authority to engage in retroactive rulemaking was inappropriate:

> The profound confusion characterizing the [Health and Human Services] Secretary's approach to this case is exemplified by its reliance on our opinion in *SEC v. Chenery Corp.*, * * * . Even apart from the fact that that case was not decided under the APA, it has nothing to do with the issue before us here, since it involved adjudication rather than rulemaking. Thus, though it is true that our opinion permitted the Secretary, after his correction of the procedural error that caused an initial reversal, * * * to reach the same substantive result with retroactive effect, the utterly crucial distinction is that *Chenery* involved that form of administrative action where retroactivity is not only permissible but standard. *Bowen,* 488 U.S. at 220-21, 109 S. Ct. at 478.

14

As in *SEC v. Chenery,* the order underlying the appeal in *Callery* was not a rulemaking decision. In fact, it was not even a *ratemaking* decision. The circumstances underlying the Court's decision in *Callery* are as follows: In 1958, the FPC granted unconditional certificates of public convenience and necessity to gas producers who had contracted with Transcontinental Gas Pipe Line Corporation (Transco) to transport and resell their gas in interstate commerce. *See United Gas Improvement Co. v. FPC,* 269 F.2d 865 (1959), *vacated Public Service Com'n of New York v. Federal Power Com'n*, 361 U.S. 195, 80 S.Ct. 292 (1959). The FPC's orders were challenged. The petitioners argued that the FPC should have granted conditional certificates that limited the prices the producers could charge. *Id.* at 867. The Third Circuit Court of Appeals affirmed the FPC's orders granting the certificates. *Id.* The United Supreme Court vacated the Third Circuit Court's opinion for reconsideration in light of the Supreme Court's opinion in another case. *Public Service Com'n of New York v. Federal Power Com'n*, 361 U.S. 195.

Subsequently, the FPC issued the gas producers conditional certificates of convenience and necessity with price limitations, and ordered the producers to refund some of the money they had received under the original certificates of convenience and necessity. *See Callery,* 382 U.S. at 225-26, 86 S.Ct. at 362.

15

The Supreme Court affirmed this refund order in *Callery. Id.* 382 U.S. at 229, 86 S.Ct. 364.

In sum, while the Court's opinion in *Callery* unequivocally supports the conclusion that an agency may remedy an error made while exercising authority such as granting a certificate, it is silent on whether an agency can do the same by adopting a retroactive rule to remedy the effects of an invalidated rule. Because the remand in *Golden NW Aluminum* is a remand upon judicial review of a Final Record of Decision in a rulemaking proceeding, opinions of different courts relying on *SEC v. Chenery Corp.*, and *Callery* do not compel the conclusion that BPA has authority to issue a retroactive rule.

The OPUC concedes that BPA does not need express authority to adopt a rule under which BPA provides refunds to preference customers for past overcharges because such a rule does not have retroactive effect. BPA does, however, need express authority to adopt a rule increasing the rate for power exchanged in a prior period and exacting payment for that increased rate by reducing future REP benefits. And, while BPA may have authority to retroactively increase rates in order to protect the public fisc by ensuring that its programs do not require subsidies from the federal treasury, *see United States v. City of Fulton,* 475 U.S. 657, 659, 106 S. Ct. 1422, 89 L.Ed. 2d 661 (1986), BPA does not have such authority when the public fisc is not in jeopardy.

16

**B.    APAC arguments.**

APAC's arguments responding to the OPUC's arguments fare no better than BPA's.  APAC asserts that the OPUC's distinction between the prohibition on retroactive rulemaking and the rule against retroactive ratemaking is a "distinction without any meaningful difference[,]" because "well established case law holds that ratemaking is a quasi-legislative form of rulemaking." APAC Brief at 13.  Because the rule against retroactive ratemaking and the prohibition on retroactive rulemaking have different origins and different applications, and because not all ratemaking is legislative, APAC is incorrect.

**1.    The prohibition on retroactive rulemaking stems from the Administrative Procedures Act and the rule against retroactive ratemaking stems from the Interstate Commerce Act.**

The Filed Rate Doctrine and the corollary rule against retroactive ratemaking stem from language originally found in the Interstate Commerce Act and now mirrored in the FPA and NGA.  *See e.g., Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co., et al.,* 284 U.S. 370, 52 S. Ct. 183, 76 L.Ed 348 (1932).   As BPA notes, BPA is not subject to the statutes underlying the Filed Rate Doctrine and corollary rule against retroactive ratemaking, and thus, these doctrines are not applicable to BPA.  *See e.g., Re United States Department of Energy – Southeastern Power Administration*, 55 FERC P 61,016, 61,045 (1991 WL 518181) ("The prohibition against

retroactive ratemaking contained in the Federal Power Act, 16 U.S.C. § 824, *et seq.* (1988), does not apply to [Power Marketing Agencies], including Southeastern, that operate subject to a different statutory and regulatory scheme.").

In contrast, the prohibition on retroactive rulemaking, on which the OPUC relies, stems from the Administrative Procedures Act (APA). Congress provided in the APA that rules are administrative actions that have prospective application. The only exceptions are the circumstances in which Congress has specifically authorized an administrative agency to adopt a rule or rules that apply retroactively. *Bowen,* 488 U.S. at 208, 109 S. Ct. at 472.

In his concurring opinion in *Bowen,* Justice Scalia distinguished between the principle underlying the court's decisions in cases such as *Natural Gas Clearinghouse* – that agencies, like courts, are free to remedy mistakes on judicial remand – from the statutory underpinnings of the prohibition against retroactive rulemaking. In *Bowen,* the Secretary urged the United States Supreme Court to conclude that the principle announced in *SEC v. Chenery* is an exception to the APA's prohibition on retroactive rulemaking. The Court did not do so. *Bowen,* 488 U.S. at 215, 109 S. Ct. at 475. And, Justice Scalia specifically addressed the Secretary's request:

> The Secretary contends that the evils generally associated with retroactivity do not apply to reasonable "curative" rulemaking –

18

that is, the correction of a mistake in an earlier rulemaking proceeding. Because the invalidated 1981 wage-index rule furnished respondent's with "ample notice" of the standard that would be applied, the Secretary asserts that it is not unfair to apply the identical 1984 rule retroactively. I shall assume that the invalidated rule provided ample notice, though that is not at all clear. It makes no difference. The issue is not whether retroactive rulemaking is fair; it undoubtedly may be, just as may prospective adjudication. The issue is whether it is a permissible form of agency action under the particular structure established by the APA. *Bowen,* 488 U.S. at 225, 109 S. Ct. at 480 (Scalia, J., concurring).

## 2. Not all ratemaking is legislative.

In *Arizona Grocery Co.*, the Court observed that "[u]nder the [Interstate Commerce] Act of 1887, the [Interstate Commerce] Commission was without power either to prescribe a given rate thereafter to be charged * * * , or to set a maximum rate for the future * * * , for the reason that so to do would be to exercise a legislative function not delegated to that body by the statute." *Arizona Grocery Co.,* 284 U.S. at 385, 52 S.Ct. at 184-85. The Court further noted that under the 1887 Act, the Commission had only the authority to exercise a function that was "judicial in character" to determine whether a rate charged by a carrier was reasonable. *Id.* And, noted the Court, this authority was accompanied by the ability to order reparations to shippers in the event the ICC determined the rate was not reasonable. *Id.*

The Court further explained that Congress subsequently passed an act granting the ICC "legislative" authority to prescribe maximum and minimum

rates for carriers and then, another act conferring legislative authority to prescribe a rate. *Id.* 284 U.S. at 354, 52 S.Ct. at 185. The U.S. Supreme Court concluded that when the ICC exercised its legislative authority to prescribe a rate, it could not require the carrier to pay reparations to a shipper if the ICC concluded in a subsequent, adjudicative, proceeding that the rate was unreasonable. *Id.* 284 at 355, 52 S.Ct. at 186.

Similarly, in *Natural Gas Clearinghouse,* the D.C. Circuit Court noted that FERC has no authority under section § 4 of the Natural Gas Act (NGA) to *prescribe* rates. 965 F.2d at 1074. The D.C. Circuit Court relied on this fact in concluding that FERC has authority to order reparations if one of its rate orders is reversed on appeal:

> We have emphasized many times that under § 4 of the NGA the FERC has no authority to affirmatively impose a rate; it must accept a pipeline's proposed rate unless it is found to be not just and reasonable. * * * If the FERC were prohibited from ordering recoupment of losses caused by its error in refusing to accept a proposed rate, later determined to be just and reasonable, the pipeline's primary right under the NGA to propose and collect a justified rate would be drastically curtailed. And, if a successful appeal of an erroneous FERC decision against the pipeline could not be enforced retroactively, a pipeline's incentive to vindicate its rights under the NGA through judicial review would be similarly diminished. *Id.* (citation omitted).

*See also Verizon Telephone Companies, et al. v. FCC,* 296 F.2d 1098, 1106-09 (D.C.Cir. 2001) (Court noting distinction between agency's ability to order

reparations for actions taken in a quasi-adjudication function and those resulting from quasi-legislation.)[2]

Concluding that BPA has no authority to retroactively increase rates for any customer group even if this Court concludes the rates are too low, will not preclude entities from seeking judicial review to "vindicate their rights." This is because BPA will not appeal its own rate determination on the ground its rates are unreasonably low. And, concluding that BPA cannot surcharge a customer group, even if this Court determines BPA's rates for that group were too low, should not preclude any other customer group from challenging BPA's rates for that group on that ground. The fact BPA cannot surcharge one customer group for rates later found to be too low would not preclude BPA from refunding any overcharges to another customer group that may have resulted from the invalidated rates.

## C. Preference customer arguments.

### 1. The preference customers' reliance on *Callery* for their assertion BPA has authority to surcharge investor-owned utilities is misplaced for the reasons discussed above.

The preference customers' arguments that BPA has authority to require investor-owned utilities to pay additional charges for power exchanged between

---

[2] Neither *Verizon* nor *Arizona Grocery* address an agency's authority to order reparations if an agency rule is reversed by a court. However, these cases refute APAC's contention that all ratemaking is legislative.

2002 and 2007 fail for reasons similar to those discussed above. The preference customers argue that the OPUC's reliance on the prohibition on retroactive rulemaking discussed in *Bowen* is misplaced, citing *Callery* for the proposition that "[i]t has long been established that an administrative agency may 'undo what is wrongfully done by virtue of [a prior] order[,]" and *Newman* for the proposition that "[c]ourts have long recognized that agencies may correct the errors created by their prior orders without violating the rule against retroactive rulemaking." (Pref. Cust. Br.at 19).

As discussed above, the OPUC concedes that the prohibition on retroactive rulemaking does not prohibit BPA from adopting a rule to provide refunds to preference customers for rates that have been invalidated by the Court because such rules are not retroactive. Further, the OPUC has never argued that BPA is precluded by the rule against retroactive ratemaking, which arises from language in the FPA, from providing such refunds. Accordingly, the OPUC does not take issue with the preference customers' arguments that this prohibition does not preclude BPA from refunding money to preference customers. To the extent the preference customers rely on *Callery* and its progeny for the conclusion BPA can adopt a rule to surcharge investor-owned utilities for power they exchanged between 2002 and 2007, their reliance is misplaced for the reasons discussed above.

**2.** **The preference customers' reliance on three of this Court's opinions stating that it may order BPA to provide refunds to customers do not address whether BPA can adopt a retroactive rule to surcharge customers.**

The preference customers also rely on this Court's opinions in *Pub. Util. Com. of State of Cal. v. FERC,* 814 F.2d 560, 562 (9th Cir. 1987), and *Oregon Pub. Util. Com'r v. Bonneville Power Admin.*, 767 F.2d 630 (9th Cir. 1985), asserting that in these cases, the Court expressly held that legal errors in BPA rate determinations can and should result in retroactive refunds of amounts paid by injured parties. (Pref. Cust. Br. 19-20). Notably, these cases only addressed whether the Court could order refunds for past overcharges. The OPUC does not dispute that BPA has authority to provide refunds to preference customers for overcharges collected in past rates.

The OPUC does challenge the preference customers' assertion that this Court can order BPA to adopt a retroactive rule increasing the rate for power previously exchanged by investor-owned utilities and exacting payment for that rate increase. This Court did not address this issue in the cases relied on by the preference customers.

Further, the basis for the Court's conclusions in these cases regarding the availability of refunds is not clear. In *Oregon Pub. Util. Com'r*, the Oregon Public Utility Commissioner and three investor-owned utilities (hereinafter referred to as "Oregon petitioners") filed an interlocutory appeal in federal

district court alleging that the BPA Administrator actions in an ongoing rulemaking proceeding deprived them of due process. 767 F.2d at 625. The federal district court dismissed the suit, concluding that jurisdiction the appeal was in the Ninth Circuit Court of Appeals. *Id.* The Oregon petitioners appealed that ruling and also, filed a petition for review in the Circuit Court and asked for a writ of mandamus under 28 U.S.C. § 1651(a) (1982). *Id.* The Court affirmed the district court's dismissal of the suit and concluded that it (the Ninth Circuit) did not have jurisdiction to review BPA's actions because BPA had yet to issue a final order. *Id.* at 628-29.

With respect to the request for a writ of mandamus, the Court relied on its previous opinion in *Cities of Anaheim, et al. v. FERC*, 723 F.2d 656, 662 (1984), to conclude that such extraordinary relief was not warranted because it could order refunds for any overpayments that might stem from a final action based on the Administrator's allegedly impermissible actions. *Id.* at 630.

In *Cities of Anaheim,* the Court addressed FERC's authority under the FPA to order refunds for interim rates adopted prior to a full hearing. 723 F.2d at 662. BPA's authority to offer refunds to customers under its organic statutes is untethered to the FPA and the analysis in *Cities v. Anaheim, et al., v. FERC*. Accordingly, the basis for this Court's conclusion in *Oregon Pub. Util. Com'r,* that the Court could order BPA to provide refunds is unclear.

24

The Court's opinion in *Pub. Util. Com. of State of Cal. v. FERC*, provides no clarity on the source of BPA's authority to provide refunds in that it merely relies on the Court's opinion in *Oregon Pub. Util. Com'r.* In *Atlantic Ritchfield Co. v. Bonneville Power Admin.,* 818 F.2d at 705, the Court did not rely on the FPA for its conclusions that refunds may be available for BPA's customers if the Court ultimately concluded its rates were invalid. However, the case is not informative on the source of this authority because the Court cited none.

In any event, the OPUC does not take issue with the conclusion that BPA may refund money to preference customers for past overcharges, which is a conclusion supported by the Court's opinion in *Atlantic Ritchfield.* However, the OPUC challenges BPA's authority to surcharge investor-owned utilities for past transactions, and this authority was not at issue in *Atlantic Ritchfield.*

25

## CONCLUSION

This Court should invalidate the provisions of the Lookback that retroactively increase the rate for power investor-owned utilities exchanged from 2002-2007 and that exact payment for that increase by reducing future REP benefits that will be owed to the investor-owned utilities under the NW Power Act.

Respectfully submitted,

JOHN R. KROGER
Attorney General
JEROME LIDZ
Solicitor General


/s/  Stephanie S. Andrus
_____
STEPHANIE S. ANDRUS  #92512
Senior Assistant Attorney General

Attorneys for Petitioner
Public Utility Commission of Oregon

SSA:kak/1961882

JOHN R. KROGER
Attorney General of Oregon
JEROME LIDZ
Solicitor General
STEPHANIE S. ANDRUS
Assistant Attorney General
1162 Court St.
Salem, Oregon 97301-4096
Telephone: (503) 378-4402

Counsel for Petitioner Public Utility Commission of Oregon

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, et al.<br><br>Petitioners,<br><br>v.<br><br>BONNEVILLE POWER ADMINISTRATION;<br><br>Respondent. | U.S.C.A. No. 08-74725, 08-74811, 08-74900, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113, 08-75130, 08-75132, 08-75133, 08-75161 & 08-75165<br><br><br>STATEMENT OF RELATED CASES |

The following cases pending in this Court are related to the consolidated

cases at issue here because they involve BPA's efforts to enforce determinations

that BPA made in the Record of Decision at issue here through provisions in

Residential Purchase and Sale Agreements:

> *Idaho Pub. Utils. Comm'n* et al. *v. BPA*, Nos. 08–74927, 08–74928, 08–74929, 08–74932, 08–74933, 08–74942 & 08–74957

The following cases pending in this Court are also related because they

involve challenges to FY2009 rates established by BPA during the WP-07S

proceeding at issue here:

CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify

that the  is proportionately spaced, has a typeface of 14 points or more and

contains 5,779 words.

DATED:  March 25, 2010

/s/  Stephanie S. Andrus
STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorney for Petitioner
Public Utility Commission of Oregon

SSA:kak/1961882

*Avista Corp.* et al. *v. BPA*, Nos. 09–73160, 09–73201, 09–73225, 09–73228, 09–73230, 09–73247, 09–73249, 09–73251, 09–73252, 09–73254, 09–73264, 09–73269, 09–73271, 09–73274 & 09–73281

On December 14, 2009, this Court ordered that all three sets of cases be calendared before the same merits panel.

Respectfully submitted,

JOHN R. KROGER
Attorney General
JEROME LIDZ
Solicitor General

/s/  Stephanie S. Andrus
_____
STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorneys for Petitioner
Public Utility Commission of Oregon

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2010, I directed the Reply Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Scott Blake Harris
U.S. Department of Energy
Office of the General Counsel
Room 6A-245
1000 Independence Ave., SW
Washington, DC 20585

/s/ Stephanie S. Andrus
STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorney for Petitioner
Public Utility Commission of Oregon