Docket Nos. 08-74927, 08-74928, 08-74929, 08-74932,
08-74933, 08-74942, 08-74957

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

IDAHO PUBLIC UTILITIES COMMISSION, et al.,

Petitioners,

v.

BONNEVILLE POWER ADMINISTRATION,

Respondent.

---

ON PETITION FOR REVIEW UNDER THE
NORTHWEST POWER ACT

---

REPLY BRIEF OF PETITIONER-INTERVENOR
CITIZENS' UTILITY BOARD OF OREGON

---

G. Catriona McCracken
Raymond W. Myers
Staff Attorneys
CITIZENS' UTILITY BOARD OF OREGON
610 SW Broadway, Ste. 308
Portland, OR 97205
Telephone: (503)227-1984
Facsimile: (503) 274-2956
catriona@oregoncub.org

# CORPORATE DISCLOSURE STATEMENT CITIZENS' UTILITY BOARD OF OREGON

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Citizens' Utility Board of Oregon ("CUB") hereby discloses the following:

CUB is an Oregon non-profit corporation formed in accordance with ORS 774.020 and ORS 65.001 et. seq. with its principal place of business at 610 SW Broadway, Suite 308, Portland, OR 97205. CUB is an IRC 501 (c)(4) and does not issue stock and is thus not owned by a publicly held corporation.

DATED: March 25, 2010

Respectfully submitted,

/s/ G. Catriona McCracken

G. Catriona McCracken, OSB #933587
Raymond W. Myers, OSB # 803208
Staff Attorneys
Citizens' Utility Board of Oregon
610 SW Broadway Ste 308
Portland, OR 97205
(503) 227-1984 ph
(503)274-2956 fax
catriona@oregoncub.org

[i]

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS .................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

I.    INTRODUCTION ................................................................... 1

II.   STATEMENT OF ISSUES.......................................................... 2

III.  ARGUMENT..................................................................... 4

      BPA lacked authority to determine and recover a Lookback from Residential
      Customers of the IOUs for alleged overpayments to the IOUs

      1.    BPA has violated its statutory obligation under the Northwest Power
            Act to provide REP benefits for residential and small farm
            customers………………………………………..…………..…............5

      2.    The Doctrine of Set-Off does not apply……………………………7

      3.    The BPA did not enter into the 2000 REP Settlement Agreements in
            Good Faith………………………………………………....................12

IV.   CONCLUSION ...................................................................13

CERTIFICATION OF COMPLIANCE WITH RULE 32(a)................................15

STATEMENT OF RELATED CASES................................................................16

CERTIFICATE OF SERVICE………………………………………….............17

[ii]

# TABLE OF AUTHORITIES

## CASES

*CP National Corp. v. BPA,*
928 F2d 905 (9th Cir. 1991) …………………………………………….. 9, 10

*Golden Nw. Aluminum Co. v. Bonneville Power Admin.*,
501 F.3d 1037 (9th Cir. 2007)....................................................................2

*EEOC v. General Telephone Co.*,
599 F.2d 322, 334 (9th Cir.1979), aff'd 446 U.S. 318, 100 S.Ct. 1698, 64
L.Ed.2d 319 (1980) ...…………………………………………………….... 7

*In re Luz Inter., Ltd.*,
219 B.R. 837, 843 (Bankr. 9th Cir., 1998)………………………………...7

*In re Pieri,*
86 B.R. 208, 210 (9th Cir. BAP 1988)………………………………..7

*Portland Gen. Elec. Co. v. Bonneville Power Admin.*,
501 F.3d 1009 (9th Cir. 2007)...............................................................2, 5

*Schaefer v. Gunzburg*,
246 F.2d 11, 16 n. 2 (9th Cir.1957) .........................................................7

*Tayloe v. Merchants' Fire Ins. Co.*,
9 How. 390, 405, 50 U.S. 390, 405, 13 L.Ed. 187 (1850), cert.
denied, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957)...............................7

## STATUTES

16 U.S.C. §839 *et seq*.…………………………………………………………..6

16 U.S.C.§839c(c)(3)………………………………………………………..6

## MISCELLANEOUS

H.R. Rep. No. 96-976, 96th Cong., 2d Sess., Pt. II, at 35 (1980), reprinted in
1980 U.S.C.C.A.N. 5989, 6033.................................................................5

## I.  INTRODUCTION

Petitioner-Intervener the Citizens' Utility Board  of Oregon (CUB) files the following Reply Brief in reply to Respondent Bonneville Power Administration's (BPA) Respondent's Brief and to the Intervener-Respondent's Briefs filed on February 25, 2010 on behalf of the Association of Public Agency Customers, et al (APAC) and Public Utility District No. 1 of Cowlitz County, Public Power Council, Pacific Northwest Generating Cooperative, Northwest Requirements Utilities, the Western Public Agencies Group, Public Utility District No. 1 of Snohomish County, the City of Seattle and Tillamook People's Utility District (collectively "Preference Customers").  CUB filed its Petitioner-Intervener Brief on September 18, 2009.  In that brief, CUB adopted the Joint Brief of the Petitioner IOUs (Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy, Inc.) filed in these consolidated cases.

Pursuant to Federal Rule of Appellate Procedure 28.1, CUB adopts by reference in whole all of the arguments that are contained in the Joint Reply Brief of the IOU petitioners (Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy, Inc.), the Joint Reply Brief of Idaho Public Utilities Commission and Idaho Power Company and the Reply Brief of the Oregon Public Utilities Commission (OPUC) filed in these consolidated cases.  In addition, CUB adopts by reference, in whole, all of the arguments that are

[1]

contained in the "Joint Reply of the Pacific Northwest Investor Owned Utilities (Avista Corporation, Idaho Power Company, PacifiCorp, Portland General Electric Company, and Puget Sound Energy, Inc.)" and "Reply Brief of Oregon Public Utility Commission filed in the companion consolidated cases *Association of Public Agency Customers, et al. v. Bonneville Power Administration*. CUB also submits the following:

CUB's primary position is that BPA violated the statutory and contract rights of the Oregon Residential Customers of the IOUs by imposing a Lookback amount against the IOUs (and thereby reducing REP benefits to Residential Customers some of whom did not benefit from the alleged overpayments) in response to this court's decisions in *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009 (9th Cir. 2007) and *Golden Nw. Aluminum, Inc. v. Bonneville Power Admin.*, 501 F.3d 1037 (9th Cir. 2007).

Each of the arguments incorporated into this brief, and each additional argument made by CUB in this brief is independent, and each affects the power costs paid by residential and small-farm consumers by hundreds of millions of dollars.

## II.    STATEMENT OF THE ISSUES

In its opening brief, CUB raised three issues. Of those issues, CUB offers its reply only on the following issue because the other issues are fully presented in

[2]

CUB's Opening brief, the joint brief of the IOU customers, the opening briefs of

the state petitioners, the joint reply brief of the IOU petitioners and the reply brief

of OPUC and IPUC:

> 1. Section 20 of the RPSAs includes a payment recovery provision that authorizes BPA to recoup settlement payments that BPA previously made to the investor-owned utilities to pass to their residential and small-farm customers as REP benefits under BPA's 2000 REP settlement agreements. No dispute exists that the payment recovery provision in Section 20 of the RPSAs is directly contrary to a contract term in the 2000 REP settlement agreements that provides that BPA has no rights to seek recovery of settlement payments in the event that the 2000 REP settlement agreements are deemed "unlawful, void, or unenforceable." Two issues are raised by BPA's adoption and implementation of the payment recovery provision in Section 20 of the RPSAs:
>> (a) Has BPA breached its contractual obligations to forgo recovery of settlement payments under the 2000 REP settlement agreements by imposing the right to recover those payments in Section 20 of the RPSAs?
>> (b) In addition to breaching its contractual obligations, has BPA abused its discretion and acted arbitrarily, capriciously, and contrary to law in imposing the payment recovery provision in Section 20 of the RPSAs?[1]

The following points applicable to that issue were previously raised by CUB

and then argued by BPA, APAC and the Preference Customers:

> A. BPA lacked authority to determine and recover a Lookback from
>
> Residential Customers of the IOUs for alleged overpayments to the
>
> IOUs.
>
> 1. Setting off overpaid REP benefits against current residential

---

[1] CUB's opening brief at 3-4.

and small farm customers BPA's statutory obligation under the Northwest Power Act to provide REP Benefits for those customers.

    2.    The Doctrine of Set-Off does not apply.

    B.    If BPA did not have a funding mechanism in mind for the no-refund clause, it did not enter into the 2000 REP Settlement Agreements in Good Faith.

### III.   ARGUMENT

**BPA lacked authority to determine and recover a Lookback from Residential Customers of the IOUs for alleged overpayments to the IOUs**

CUB argued in its opening brief that BPA has no authority to avoid its statutory obligations to provide REP benefits to residential and small-farm customers to save costs or reduce rates for other customers.[2]  BPA argued that under the common law doctrine of setoff, BPA, like any creditor, has the right to set off debts.[3]  The Preference Customers argued similarly.[4]  APAC agreed and

---

[2] CUB's Opening Brief P. 24.

[3] BPA Brief P. 66.

[4] Preference Customers' Brief P. 8.

[4]

also argued that no right of set off is available because the underlying contract is void.[5]

**1. BPA Haas Violated Its Statutory Obligation under the Northwest Power Act to Provide REP Benefits for Residential and Small-Farm Customers**

As previously set forth in CUB's Opening Brief, this Court has repeatedly recognized that REP benefits provided under the Northwest Power Act are designed to reduce inequities in the allocation of federal power resources in the Pacific Northwest and to promote rate parity among residential and small-farm customers served by different utilities.[6] As explained in its legislative history, the REP was designed to "allow the residential and small farm consumers of the region's IOUs to share in the economic benefits of the lower-cost Federal resources marketed by BPA and [to] provide these consumers wholesale rate parity with residential consumers of preference utilities in the region."[7] Under the REP, the participating utilities by statute must pass all of the cost benefits of the REP

---

[5] APAC's Brief Pages 25-26.

[6] See, e.g., *Portland Gen. Elec. Co. v. Bonneville Power Admin.,* 501 F.3d 1009, 1014-15 (9th Cir. 2007) (discussing history of program).

[7] H.R. Rep. No. 96-976, 96th Cong., 2d Sess., Pt. II, at 35 (1980), reprinted in 1980 U.S.C.C.A.N. 5989, 6033.

[5]

straight to their residential and small-farm customers.[8] Because the majority of Oregon is served by investor-owned utilities, most Oregonians rely on the REP to receive the benefits of the low-cost power generated by the federal hydropower system.[9] These residential customers are customers of Idaho Power Company, PacifiCorp, and PGE. And, as noted in CUB's opening brief, they are family farmers, teachers, bus drivers, janitors, nurses, doctors, lawyers and the unemployed.

The RPSA contracts were adopted by BPA to implement the Residential Exchange Program ("REP") under the Pacific Northwest Electric Power Planning and Conservation Act ("the Northwest Power Act").[10] Therefore, the residential and small-farm customers are statutory beneficiaries of the RPSA contracts. CUB contends that because the NWPA requires that the benefits of the REP contracts be passed through to the IOU's residential customers, the residential customers are necessarily the intended beneficiaries of the RPSA contracts and BPA lacks

---

[8] See 16 U.S.C.§ 839c(c)(3) ("The cost benefits … any purchase and exchange sale [under the REP] …. shall be passed through directly to such utility's residential loads within such State …").

[9] Direct Testimony of the Citizens' Utility Review Board of Oregon, Witness: Bob Jenks, WP-07-E-CU-1, at p. 1 ("Jenks Testimony"), R.A.R. 074832.

[10] 16 U.S.C. § 839 *et seq.*

statutory authority to use the contracts to reduce those REP benefits for residential and small-farm customers merely to save costs or reduce rates for other customers.

### 2. The Doctrine of Set-Off does not apply.

BPA applied the common law doctrine of setoff to recover the alleged overpayment. The doctrine of setoff is equitable in nature.[11] "It is the historic purpose of equity to secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief."[12] In bankruptcy proceedings, a party asserting setoff must demonstrate the following: (1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual.[13]

The Ninth Circuit has set forth a three-prong test for determining the mutuality of debts. These factors are: "(1) the debts must be in the same right; (2)

---

[11] *In re Pieri*, 86 B.R. 208, 210 (9th Cir. BAP 1988).

[12] *EEOC v. General Telephone Co.*, 599 F.2d 322, 334 (9th Cir.1979), aff'd 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *see also Schaefer v. Gunzburg*, 246 F.2d 11, 16 n. 2 (9th Cir.1957) (equity court should give final relief demanded by circumstances of the case) (*quoting Tayloe v. Merchants' Fire Ins. Co.*, 9 How. 390, 405, 50 U.S. 390, 405, 13 L.Ed. 187 (1850)), cert. denied, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957).

[13] *In re Luz Inter., Ltd.*, 219 B.R. 837, 843 (Bankr. 9th Cir., 1998)

[7]

the debts must be between the same individuals; and (3) those individuals must stand in the same capacity."[14]

BPA argues that the debts are mutual because the contracts are between the IOU's and BPA, not between the residential consumers and BPA.[15] This argument ignores the realities created by the NWPA. And, BPA has responded to CUB's concerns about the inequity of recovering overpayments from new customers of the IOUs by stating: "BPA believes that 'rough justice' accomplished under this approach, while imperfect is better than no justice at all."[16] In the related case of *APAC et al. v. BPA*, Ninth Circuit No. 08-74725, 08-74811, 08-74900, 08-75008, 08-75098, 08-75091, 08-75099, 08-75112, 08-75133, 08-75113, 08-75132, 08-75130, 08-75161, 08-75165, BPA while continuing to assume that the current ratepayers will bear the burden of repaying the overpayments, now seems to have revised its prior position and to believe that all current ratepayers benefitted from the alleged overpayments – this is ludicrous:

> OPUC contends that the parties adversely affected by the Look back are the IOUs' residential and small-farm customers who relied fully, and to their detriment, on the benefits provided under the REP Settlement Agreements. BPA recognizes that the IOUs' customers are not at "fault" for receiving overpayments. Nevertheless, these consumers received the benefits of the

---

[14] *Id.*

[15] BPA's brief at 69.

[16] RAR 096401, SER 0203.

[8]

overpayments and therefore it is reasonable to use future REP benefits to repay the COUs."[17]

Here, BPA seeks to recover a debt allegedly owed by the IOUs to BPA by reducing benefits that the IOUs are required to pass through to current IOU residential and small-farm customers. Thus, although the contract is between BPA and the IOUs, the practical effect of BPA's approach is to recover the debt from current residential and small-farm customers, not the IOUs. And as noted above, contrary to what BPA suggests, at least some current customers of each IOU did not benefit from the overpayment. Thus, while the contracts may be between the same parties, the individuals burdened with repaying the debt are neither parties nor necessarily the same statutory beneficiaries of the alleged overpayment. In fact, many of the individuals burdened by the repayment have no prior connection to this contract at all while many current customers of Preference utilities who benefit from the repayment suffered no injury.

APAC and the Preference Customers rely on *CP National Corp. v. BPA,* 928 F2d 905 (9th Cir. 1991) for the proposition that BPA has the right to setoff past alleged overpaid REP benefits in this case against future REP benefits in this case. (APAC Brief P. 25-26; Preference Customers' Brief P. 8.) But, CP National did

---

[17] BPA brief in APAC et al v. BPA at 83.

not involve application of the setoff doctrine. In *CP National*, a utility received an overpayment of increased REP benefits *paid during an interim review* of the utility's request for an increase in its ASC, which the utility later withdrew. [18] After CP National's withdrawal, BPA proceeded to collect the overpayment. CP National argued that BPA abused its discretion by requiring the utility to return the amounts paid during the interim review. CP National further argued that BPA should not be allowed to recover the overpayment from it because the overpayment was paid to and retained by residential ratepayers, but "shareholders ended up paying the subsidy because BPA collected it from [the utility] rather than the residential customers who received it."[19] The court stated:

> While the agreement provides that the benefits of the exchange program must be passed through to the utility's ratepayers, the exchange program itself involves only CP National and BPA. **There is no contractual relationship between BPA and CP National's ratepayers, and CP National suggests no method by which BPA could recover the interim subsidy payments from CP National's ratepayers. In any event, however, it must be remembered that CP National obtained the interim payments based on ASC costs it was unable to substantiate before the OPUC.** While CP National may not now be able to recover from its ratepayers the interim payments it passed on to them, BPA is not responsible for this. There is no basis under these circumstances for requiring BPA to assume any resulting loss.[20] (emphasis added)

---

[18] Here, in contrast, the alleged overpayments arose as a result of contracts entered into by BPA, based on BPA calculations and of longstanding duration.

[19] *CP National Corp. v. BPA,* 928 F2d 905, 914 (9th Cir. 1991).

[20] *Id.*

[10]

As the Preference Customers point out, *CP National* does not support the conclusion that the IOUs would be able to pass future reductions in payments through to their residential and small-farm customers. (Preference Customers' Brief Page 27.) Neither, however, does it support the conclusion that in this case, where the alleged overpayment is caused by BPA, that the IOUs should be required to repay any overpayment caused by BPA.

The *CP National* court noted that the utility itself caused the overpayment. Thus, in *CP National* equitable considerations weighed against the utility's keeping the overpayment or recovering the overpayment from its customers. The court, therefore, allowed recovery against the utility. Here, the alleged overpayment was caused, not by the IOUs, but by BPA exceeding its own statutory authority. Therefore, equitable considerations weigh against BPA and in favor of the IOUs and the IOUs' residential and small-farm customers. Recovery of the alleged overpayment should not be allowed against the IOUs and certainly not against the IOUs' residential and small-farm customers. Recognizing that setoff is an equitable remedy, CUB urges the court to find that under the facts discussed above, mutuality of debt does not exist because it is inequitable to require residential and small-farm customers, especially those who did not benefit from the alleged REP overpayments, to be responsible for repaying the alleged

[11]

overpayments to customers of the Preference Utilities, especially the customers who did not suffer injury.

CUB urges this court to fashion a remedy that is equitable to all those affected by the RPSA contracts, including the statutory beneficiaries who are the residential and small farm customers of the IOUs.  There is no mutuality of debt here and setoff should not be allowed.  To the extent that BPA seeks to recover the alleged overpayment amount from the residential and small-farm customers of the IOUs, it does so without statutory and case law authority.

**3.      The BPA did not enter into the 2000 REP Settlement Agreements in Good Faith**.

CUB argued in its opening brief that when it entered into the no-refund clause, to be in good faith, BPA must have had some funding mechanism in mind for recouping the alleged illegally made payments without requiring a refund or it would not have entered into the no-refund clause.[21]  BPA's only response is that BPA cannot absorb the loss because ultimately, all its costs are borne by its customers.[22]  Essentially, BPA is admitting that it had no funding mechanism in mind when it entered into the no-refund clause.  Therefore, it could not have

---

[21] Cub's initial brief at 20-21.

[22] BPA brief at 91.

[12]

entered into the no-refund provision in good faith as it allegedly had no means of satisfying the provision. Again, equity weighs against BPA.

## IV. CONCLUSION

BPA's decisions in this proceeding have had the effect of reducing REP benefits to residential and small-farm customers to which they are statutorily entitled. This Court should not permit BPA to continue to violate the rights of residential and small-farm customers. BPA is not entitled to invoke the common-law doctrine of setoff. This Court should remedy BPA's serious errors by declaring that the risk allocation provision was enforceable and that BPA's repudiation of that provision was a breach of contract, an abuse of discretion, and arbitrary, capricious, and contrary to law. CUB also urges this court to hold that neither BPA, nor the IOUs may setoff alleged overpayments of REP benefits against REP benefits of current residential and farm customers.

[13]

Respectfully submitted on March 25, 2010 by:


By: /s/ G. Catriona McCracken
G. Catriona McCracken
Raymond W. Myers
Staff Attorneys
CITIZENS' UTILITY BOARD OF
OREGON
610 SW Broadway, Ste. 308
Portland, OR 97205
Telephone: (503)227-1984
Facsimile: (503) 274-2956
catriona@oregoncub.org
ray@oregoncub.org

[14]

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,537  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(2)(6) because this brief has been prepared in a proportionately spaced typeface in 14-point Times New Roman.

DATED this 25th day of March 2010.

Respectfully submitted,

By: /s/ G. Catriona McCracken_____
       G. Catriona McCracken

15

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Petitioner-Intervener CUB states that the following cases pending in this Court are related to this case because they raise closely related issues:

*APAC et al. v. BPA*, Ninth Circuit No. 08-74725, 08-74811, 08-74900, 08-75008, 08-75098, 08-75091, 08-75099, 08-75112, 08-75133, 08-75113, 08-75132, 08-75130, 08-75161, 08-75165.

*Avista Corporation v. BPA, et al, Ninth Circuit No. 09-73160*

DATED this 25th day of March, 2010.

Respectfully submitted,

By: /s/ G. Catriona McCracken
G. Catriona McCracken

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2010, I caused to be electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System.

Participants in the case who are registered CM/ECF users will be served by the appellate CF/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have caused to be mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM-ECF participants:

David Hill
Department of Energy
1000 Independence Avenue, SW
Washington DC  20585

By: /s/ G. Catriona McCracken
G. Catriona McCracken

17