Docket Nos. 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113, 08-75130, 08-75132, 08-75133, 08-75161, 08-75165 (Consolidated)

---

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

ASSOCIATION OF PUBLIC AGENCY CUSTOMERS, *et al.,*

Petitioners,

v.

BONNEVILLE POWER ADMINISTRATION

Respondent.

---

ON PETITION FOR REVIEW UNDER THE NORTHWEST POWER ACT

---

REPLY BRIEF OF THE IDAHO PUBLIC UTILITIES COMMISSION
IN DOCKET NO. 08-75113

---

LAWRENCE G. WASDEN
ATTORNEY GENERAL

DONALD L. HOWELL, II (ISB #3366)
D. NEIL PRICE (ISB #6864)
Deputy Attorneys General
PO Box 83720
Boise, ID 83720-0074
Telephone: (208) 334-0312
E-mail: don.howell@puc.idaho.gov
neil.price@puc.idaho.gov
Attorneys for Petitioner
Idaho Public Utilities Commission

# TABLE OF CONTENTS

**I. SUMMARY OF ARGUMENT** ..........................................................................1

**II. ARGUMENT** ............................................................................................2

   A. BPA's Lookback Approach is Prohibited by the Rule Against Retroactive Rulemaking and is not Compelled by this Court's Prior Decision...................2

   B. BPA's Lookback Approach is Prohibited by the Rule Against Retroactive Ratemaking because BPA cannot Demonstrate that it will require a Federal Subsidy if it does not Institute a Retroactive Rate.............................................5

      1. Residential and Small Farm Customers of the IOUs did not have Adequate Notice that their Rates were Subject to a Retroactive Change.....8

   C. BPA's Decision to Institute a Retroactive Approach is not Entitled to Substantial Deference...............................................................................................9

**III. ADOPTION OF OTHER ARGUMENTS** ....................................................12

**RELIEF REQUESTED** ....................................................................................13

**STATEMENT OF RELATED CASES**...............................................................15

# TABLE OF AUTHORITIES

## CASES

*Amalgamated Sugar Co. v. Vilsack,* 563 F.3d 822, 834 (9th Cir. 2009) .................10

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468,
102 L.Ed.2d 493 (1988)..................................................................................4, 11

*Bradley v. Richmond School Bd.*, 416 U.S. 96, 94 S.Ct. 2006 (1974) ......................4

*Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 844,
104 S.Ct. 2778, 2782 (1984) ....................................................................... 10, 11

*Golden Northwest Aluminum, Inc. v. Bonneville Power Admin.* ("*Golden NW*"),
501 F.3d 1037, 1053 (9th Cir. 2007), *cert. denied sub nom. Portland General
Elec. Co. v. Public Power Council*, ___ U.S. ___, 128 S.Ct. 2902 (2008). 3, 5, 11

*Kaiser Aluminum Corp. v. Bonjorno*, 494 U.S. 827, 837,
110 S.Ct. 1570, 1577 (1990) ..........................................................................4

*K-Mart Corp. v. Cartier,* 486 U.S. 281, 294 (1988)...................................................10

*Landgraf v. USI Film Products*, 511 U.S. 244, 280,
114 S.Ct. 1483, 1505 (1994) ..........................................................................8

*Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1075 (D.C. Cir. 1992) .........8

*Newman v. Apfel*, 223 F.3d 937, 942 (9th Cir. 2000) ...........................................3, 4

*OXY USA, Inc. v. FERC*, 64 F.3d 679, 699 (D.C. Cir. 1995)...................................8

*Portland General Elec. Co. v. Bonneville Power Admin. ("PGE")*, 501 F.3d 1009,
1032 (9th Cir. 2007), *cert. denied*, ___ U.S. ___,
128 S.Ct. 2902 (2008) ........................................................................ 3, 10, 11

*Southeastern Power Admin.*, 55 F.E.R.C. ¶¶ 61,016, 61,045 (1991) ...................6, 7

*U.S. v. City of Fulton*, 475 U.S. 657, 668 (1986) .................................................5, 6

*Utah Power & Light Co. v. Idaho PUC*, 685 P.2d 276, 285 (Idaho 1984) ..............7

## STATUTES

16 U.S.C. § 824(f).......................................................................................................5

16 U.S.C. § 839c(c)....................................................................................................1

16 U.S.C. § 839c(c)(3) ...............................................................................................9

16 U.S.C. § 839f(e)(2) ..............................................................................................10

5 U.S.C. § 706(2)(A)......................................................................................10

5 U.S.C. § 706(2)(A) and (C) ...........................................................................5

5 U.S.C. §§ 701-706......................................................................................10

## I.  SUMMARY OF ARGUMENT

In its Opening Brief to the Court, the Idaho Public Utilities Commission (IPUC) explained how Bonneville Power Administration's (BPA) Lookback approach, adopted during its WP-07 Supplemental rate proceeding, represents an issue of first impression in this Circuit.  In the underlying rate proceeding, BPA retroactively adjusted its power rates and removed statutorily-mandated Residential Exchange Program (REP) benefits under Section 5(c) of the Northwest Power Act (NWPA) from one set of customers and awarded them to another.  16 U.S.C. § 839c(c).  The Idaho PUC discussed how the Lookback approach was a direct violation of what the Court has referred to as "one of the fundamental tenets of FERC jurisprudence" – the rule against retroactive ratemaking.

In its Answering Brief, BPA states that it was compelled by the Court's remand order to craft a retroactive remedy in favor of the Consumer-Owned Utilities (COUs).  BPA's claim that it was bound by the Court's remand order to institute a retroactive rate is contradicted by its own pleadings and the record in this case which reveal that BPA considered several options, including a purely prospective approach that would respond to the Court's remand order and establish a new COU preference rate on a going forward basis.

In its Answering Brief, BPA also claims that the rule against retroactive ratemaking does not apply to BPA because the Agency has a common law duty to

recover the costs of its hydroelectric programs. A review of the case law demonstrates that federal Power Marketing Administrations (PMAs) such as BPA are not exempt from the application of the rule against retroactive ratemaking unless a PMA can show that it would fail to recover the costs of its hydroelectric programs absent a retroactive rate (Lookback approach).

Additionally, residential and small farm customers of the regional Investor-owned Utilities (IOUs) were not provided with adequate notice that their rates were subject to change. Allowing BPA's Lookback approach to stand would present enormous problems of intergenerational inequity. In essence, BPA's Lookback approach seeks to recoup hundreds of millions of dollars of REP benefits from more than 1.6 million IOU customers regardless of whether those customers actually received the benefits.

## II. ARGUMENT

**A.** **BPA's Lookback Approach is Prohibited by the Rule Against Retroactive Rulemaking and is not Compelled by this Court's Prior Decision.**

BPA's actions in this case violate the general prohibition against retroactive rulemaking. In its Answering Brief, BPA protests that it was compelled by "binding judicial orders" to concoct a retroactive rule. (BPA Br. 46.)

This claim is disingenuous and does not comport with the Final Record of Decision (Final ROD) for the WP-07 Supplemental Proceeding. I.E.R. 31 (R.A.R.

062341).  During its deliberations on how to best respond to the Court's decisions in *Golden NW* and *PGE*, BPA states that it considered "a wide range of options." (BPA Br. 82.)  In the Final ROD, BPA readily admits that one of the options it seriously considered in response to this Court's remand order included the following approach:

> <u>Leave the FY 2002-2006 rates untouched</u> and reopen the 2007 rate case in such a fashion as to ensure that, <u>on a prospective basis, preference customers</u> do not pay for any REP costs . . . without making any adjustments or without 'carrying forward' any over- or under payments from the FY 2002-2006 rates.

I.E.R. Vol. I 31 (R.A.R. 062341) (emphasis added).  Thus, BPA acknowledged that prospective rate relief without change to the prior rates was one of several options available to the Administrator.

In making the duplicitous claim that it was forced to institute a retroactive rule on remand, BPA is seeking to take advantage of an exception, found in a select passage that BPA plucked from this Court's decision in *Newman v. Apfel*, 223 F.3d 937, 942 (9th Cir. 2000), to the general rule against retroactive rulemaking.  *Newman* is distinguishable for two primary reasons.  First, *Newman* is factually distinguishable.  In *Newman* the Plaintiff was seeking review of the Social Security Commissioner's refusal to reimburse Newman from available social security funds.  *Id.* at 941.  Unlike Social Security, BPA insists it had no immediate source of funds to reimburse the COUs.  (BPA Br. 55, 87.)

-3-

Second, in its limited review, the Court held that Newman had actual standing to sue. The Court found that Newman's request for the promulgation of a retroactive rule reimbursing her, and other class participants, for past social security underpayments satisfied the predicate of "redressability" because the relief Newman sought "would 'remedy the injury suffered.'" *Id.* Thus, while the *Newman* Court reaffirmed the "capacity of the courts to order retroactive relief . . . [,]" it did so only in the context of an aggrieved party making a specific request for a retroactive rule to enable relief. *Id.* at 942. In doing so, the Court was careful to not question the controlling legal authority on the issue found in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). *Id.*

The Supreme Court's unanimous *Bowen* decision declaring the well-known axiom "that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress" remains in effect. *See Kaiser Aluminum Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577 (1990) (declining to reconcile the "apparent tension" with the Court's decision in *Bradley v. Richmond School Bd.*, 416 U.S. 96, 94 S.Ct. 2006 (1974), when the plain language "evidences clear congressional intent.").

The Court did not compel BPA to adopt a retroactive approach. The Court simply remanded the matter back to BPA and directed the Agency to set rates in

accordance with its opinion.  *See Golden Nw. Aluminum, Inc. v. Bonneville Power Admin.* ("*Golden NW*"), 501 F.3d 1037, 1053 (9th Cir. 2007), *cert. denied sub nom. Portland General Elec. Co. v. Public Power Council*, ___ U.S. ___, 128 S.Ct. 2902 (2008).  The Court should invalidate the Lookback Approach adopted by BPA because it is arbitrary, capricious and not in accordance with law.  5 U.S.C. § 706(2)(A) and (C).

**B.     BPA's Lookback Approach is Prohibited by the Rule Against Retroactive Ratemaking because BPA cannot Demonstrate that it will require a Federal Subsidy if it does not Institute a Retroactive Rate.**

BPA concedes that the language in the Federal Power Act (FPA) explicitly prohibits retroactive ratemaking.  (BPA Br. 52-53.)  However, BPA cites 16 U.S.C. § 824(f) for the proposition that "Federal power marketing agencies are exempted from the FERC rate regulation under the FPA. . . ."  (BPA Br. 52.)  BPA argues that its status as a federal Power Marketing Administration (PMA) coupled with its common law duty under the Flood Control Act "to protect the public fisc by ensuring that federal hydro-electric programs recover their own costs . . ." renders the filed rated doctrine and the prohibition of retroactive ratemaking inapplicable. *Id.*

However, the primary case cited by BPA, *U.S. v. City of Fulton*, 475 U.S. 657, 668 (1986), in support of this bold claim does not grant an absolute exemption from the application of the rule against retroactive ratemaking.  In fact, in the *City*

*of Fulton*, the Supreme Court did not reference either the filed rate doctrine or the rule against retroactive ratemaking in its opinion. The issue before the Court was limited to whether the Secretary of Energy had the authority to put "rates for federally owned hydroelectric dams into effect on an interim basis pending further review by the Federal Energy Regulatory Commission." *Id.* at 658. Interim rate setting was deemed compatible with the Secretary's dual obligation under the Flood Control Act to protect consumers by providing the "lowest possible rates . . . consistent with sound business principles." *Id.* at 667-68.

Thus, the most expansive reading of the holding in that case would be that a federal PMA may institute a rate that recoups costs incurred in the past when the PMA can show that it will fail to recover the actual costs of its programs through a purely prospective rate. The litany of SEPA and SWPA cases included in BPA's Answering Brief are contemporary affirmations by lower tribunals of this general theme: PMAs must be allowed to recover their actual costs and recoup the federal investment. (BPA Br. 53-54.)

The Lookback approach adopted by BPA in this case does not coincide with any demonstrated need by BPA "to ensure recovery of both costs of producing power and [recovering] the Federal investment." *Southeastern Power Admin.*, 55 F.E.R.C. ¶¶ 61,016, 61,045 (1991). Moreover, FERC noted in *Southeastern* that a PMA's ability to engage in retroactive ratemaking was "to ensure recovery of both

the costs of producing power and [recovering] the Federal investment." *Id.* (BPA Br. 54.) These factors are not present in this case.

BPA notes that "[a]s of October 1, 2009, BPA had returned an additional $154 million to the COUs through credits to power bills, for a total reimbursement . . . of $410 million." (BPA Br. 36.) This is clear evidence that if BPA labors under a revenue shortage at this time it is precisely because the Agency has embarked upon a path of retroactive ratemaking and not due to any failure to adequately recover its power costs or federal investment.

The Lookback approach would impose new duties on residential and small farm customers of IOUs throughout the Pacific Northwest. Unlike the customers in the cases cited by BPA, many years have passed since the "overcharges" are alleged to have occurred and the BPA decision to recover that amount through retroactive rates. (BPA Br. 47.) Since that time, a significant percentage of the customers of the region's IOUs who received the benefit of the alleged "overcharges" are no longer residing in the region and new customers have taken their place. This inescapable fact will inevitably lead to overwhelming problems regarding inter-generational inequity. *See e.g.*, *Utah Power & Light Co. v. Idaho PUC*, 685 P.2d 276, 285 (Idaho 1984) (utility ratepayers are not a fungible mass where the utility ratepayers of one year may be substituted for those of another year).

> ***1. Residential and Small Farm Customers of the IOUs did not have Adequate Notice that their Rates were Subject to a Retroactive Change.***

The Court should apply the rule against retroactive ratemaking because a great many residential and small-farm customers throughout the Northwest lacked "adequate notice" that their rates were subject to a "later adjustment." *OXY USA, Inc. v. FERC*, 64 F.3d 679, 699 (D.C. Cir. 1995) (*quoting Natural Gas Clearinghouse v. FERC*, 965 F.2d 1066, 1075 (D.C. Cir. 1992).

BPA alleges that "a timely Ninth Circuit petition was filed seeking review of the WP-02 rates and all parties were on notice that the rates had not undergone final review for statutory compliance." (BPA Br. 56-57.) BPA's argument fails to acknowledge the large number, perhaps in the hundreds of thousands, of current IOU residential and small-farm customers who were not customers when the Ninth Circuit petition was filed and did not receive REP benefits during the 2002-2008 rate periods. Ultimately, BPA's approach would deprive contemporary IOU customers of their vested rights under the NWPA to receive REP benefits well into the future. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505 (1994) (Holding that in order for a statute to have retroactive effect it must not "impair rights a party possessed when he acted . . .").

BPA countered that the "Lookback does not impair rights . . . because . . . the IOUs never had legal rights in the first place to the level of benefits in the REP

Settlements." (BPA Br. 49.) Assuming arguendo that BPA's argument holds true as applied to the utilities themselves, the Lookback approach adopted by BPA is certainly punitive toward the IOU customers that did not receive REP benefits during the relevant rate period but will nevertheless be forced to forego REP benefits in the future under the Lookback analysis.

BPA's notice argument is wholly unrealistic because it suggests that the IOUs could have taken appropriate action to safeguard against an adverse ruling and ignores the nature of the REP itself. Under the express terms of the NWPA, the IOUs are required to pass through all REP benefits directly to their residential and small farm customers. *See* 16 U.S.C. § 839c(c)(3) ("benefits shall be passed directly to such utility's" eligible customers). The IOUs are also subject to close regulatory oversight assuring that the benefits passed through directly to customers as credits on their electric bills. The IOUs simply did not have the option to hold those amounts in abeyance, nor could they foresee that BPA would later concoct a retroactive remedy in order to disgorge previously conveyed REP benefits from their customers.

## C. BPA's Decision to Institute a Retroactive Approach is not Entitled to Substantial Deference.

BPA's determination to implement the Lookback approach must be overturned because it is arbitrary, capricious, and manifestly contrary to the statute. *Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 844, 104 S.Ct.

2778, 2782 (1984) (citations omitted). *Chevron* deference is not "warranted where . . . Congress has squarely addressed the issue." *Portland Gen. Elec. Co. v. Bonneville Power Admin. ("PGE")*, 501 F.3d 1009, 1032 (9th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2902 (2008). The Court reasoned that BPA's interpretation of its settlement authority under the NWPA was "neither consistent with the plain language of its organic acts nor with general principles of administrative law." *Id.*

Section 9(e)(2) of the NWPA, 16 U.S.C. § 839f(e)(2), provides that the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA") governs the scope of judicial review of BPA's actions. Under the APA, BPA's actions are upheld unless they are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). BPA cannot adopt a regulation that violates the requirements of the NWPA. *K-Mart Corp. v. Cartier,* 486 U.S. 281, 294 (1988); *PGE,* 501 F.3d 1009, 1035.

Additionally, "[w]here an agency interprets or administers a statute in a way that furthers its own administrative or financial interests, the agency interpretation must be subject to greater scrutiny to ensure that it is consistent with Congressional intent and the underlying purpose of the statute." *Amalgamated Sugar Co. v. Vilsack,* 563 F.3d 822, 834 (9th Cir. 2009).

-10-

BPA's financial position hinges on the implementation of its Lookback approach. As the result of the adverse rulings in *PGE* and *Golden NW*, and pursuant to its Lookback analysis, BPA calculated that it must recoup a total of $1.002 billion from the IOUs and refund that amount to the COUs. (BPA Br. 35.) It is hard to imagine a factual scenario wherein BPA might have a greater incentive to interpret its own authority in a manner that would allow the Agency to avoid compromising its financial and administrative interests.

BPA brazenly asserts that its Lookback Analysis conforms with, *inter alia*, the terms and provisions of the NWPA. (BPA Br. 41.) However, BPA does not point to a single provision of the NWPA which confers upon the Agency the requisite authority to institute a retroactive approach. To the contrary, the administrative record in this case contains a clear admission by BPA that the NWPA "does not explicitly provide statutory authority for retroactively providing refunds. . . ." I.E.R. Vol. I 46 (R.A.R. 062356).

BPA also argues that its decision to reject a prospective approach and implement a retroactive approach was made in response to the Court's mandate "to adhere to statutory requirements in the future . . . [and] rectify past harm." (BPA Br. 82-83.) The Supreme Court has long held that "agency litigating positions that are wholly unsupported by regulation, rulings or administrative practice" are not entitled to *Chevron* deference. *Bowen*, 488 U.S. at 212. In *Bowen*, the Supreme

-11-

Court declined to give deference to the Secretary of the Dept. of Health and Human Services' decision to institute a "retroactive rule" because it "appear[ed] to be nothing more than an agency's convenient litigating position . . ." *Id.* at 213. Like *Bowen*, the litigation in this case rises out of a decision by an Agency litigant to institute a retroactive rule that would "recoup sums previously paid as the result of [a Circuit] Court ruling . . ." *Id.* at 207.

Therefore, BPA's actions seeking to implement the Lookback approach should be subject to enhanced scrutiny because they are contrary to the express language of the NWPA and further BPA's own financial and administrative interests.

### III.  ADOPTION OF OTHER ARGUMENTS

In the interest of brevity, the Idaho PUC does not set forth in detail responses to the arguments of BPA and its allies respecting BPA's determinations of Lookback balances.  The Idaho PUC and Idaho Power adopt by reference the arguments contained in the:

A.  "Joint Reply Brief of Petitioners, Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy" filed in this case.

B.  "Joint Reply Brief of the Pacific Northwest Investor Owned Utilities (Avista Corporation, Idaho Power Company, PacifiCorp, Portland General Electric Company, and Puget Sound Energy, Inc.)" filed in the companion case, *Idaho*

*Public Utilities Commission, et al. v. Bonneville Power Administration*, Docket Nos. 08-74927, 08-74828, 08-74929, 08-74932, 08-74933, 08-74942, 08-74957.

C. "Joint Reply Brief of Idaho Public Utilities Commission and Idaho Power Company as Petitioner in Docket Nos. 08-74927 and 08-74933," filed in the companion case, *Idaho Public Utilities Commission, et al. v. Bonneville Power Administration.*

## RELIEF REQUESTED

For the foregoing reasons, the final determinations of BPA regarding the Lookback approach contained in the WP-07 ROD should be declared to be arbitrary, capricious, an abuse of discretion and not in accordance with law. The Court should remand this matter to BPA with instructions to revise its WP-07 ROD in conformance with the opinion of the Court.

DATED this 25th day of March 2010.


By:  */s/ D. Neil Price*

D. Neil Price (ISB# 6864)
Donald L. Howell, II (ISB# 3366)
Deputy Attorneys General

Idaho Public Utilities Commission
472 W. Washington Street
Boise, ID 83702-5918
neil.price@puc.idaho.gov
don.howell@puc.idaho.gov
Telephone: (208) 334-0314
            (208) 334-0312
Facsimile:  (208) 334-3762

## STATEMENT OF RELATED CASES

There are several related cases pending in this Court which have been consolidated in companion dockets pursuant to Circuit Rule 28-2.6. The consolidated cases involve related issues.

*Idaho Public Utilities Commission (“Idaho PUC”), et al. v. Bonneville Power Administration*, Docket Nos. 08-74927, 08-74928, 08-74929, 08-74932, 08-74933, 08-74942 and 08-74957. By Order of the Court dated June 4, 2009, the consolidated cases in the companion appeal (*Idaho PUC, et al. v. BPA)* use the same Record on Appeal as the present consolidated dockets (*APAC, et al. v. BPA*). The two separate cases are calendared before the same panel. *Id.*

Another set of related cases are consolidated in *Avista Corporation, et al. v. Bonneville Power Administration*, Docket Nos. 09-73160, 09-73201, 09-73225, 09-73228, 09-73230, 09-73247, 09-73249, 09-73251, 09-73252, 09-73254, 09-73264, 09-73269, 09-73271, 09-73274, and 09-73281.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed.R.App. P.32(a)(7)(C) and Ninth Circuit Rules 32-1, the attached reply brief is proportionately spaced, has a typeface of 14 points or more, and contains 2,955 words.

Date:   <u>March 25, 2010</u>

By: <u>*/s/ D. Neil Price*   </u>
D. Neil Price (ISB# 6864)
Donald L. Howell, II (ISB# 3366)
Deputy Attorneys General

Idaho Public Utilities Commission
472 W. Washington Street
Boise, ID 83702-5918
neil.price@puc.idaho.gov
don.howell@puc.idaho.gov
Telephone: (208) 334-0314
                (208) 334-0312
Facsimile:  (208) 334-3762

**CERTIFICATE OF SERVICE**
When <u>Not</u> All Case Participants are Registered for
the Appellate CM/ECF System

U.S. Court of Appeals Docket Nos. 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113
08-75130, 08-75132, 08-75133, 08-75161, 08-75165 (Consolidated)

I hereby certify that I electronically filed the foregoing **Reply Brief of the Idaho Public Utilities Commission, Petitioner, Docket No. 08-75113**, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 25, 2010.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

David Hill
Department of Energy
1000 Independence Avenue SW
Washington DC 20585


Signature:      *s/ D. Neil Price*
                Deputy Attorney General
                Idaho Public Utilities Commission

-17-