Nos. 08-74927, 08-74928, 08-74929, 08-74932, 08-74933, 08-74942, 08-74957

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

IDAHO PUBLIC UTILITY COMMISSION, *et al.*,

Petitioners,

BONNEVILLE POWER ADMINISTRATION,

Respondent.

_____

PETITIONER PUBLIC UTILITY COMMISSION OF OREGON
REPLY BRIEF

_____

PETITION FOR REVIEW UNDER THE
NORTHWEST POWER ACT

_____

JOHN R. KROGER
Attorney General
JEROME LIDZ
Solicitor General
STEPHANIE S. ANDRUS
Senior Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
Attorneys for Petitioner Public Utility
Commission of Oregon

_____
_____

# TABLE OF CONTENTS

REPLY BRIEF ........................................................................................... 1

    I.      The 20-year term of the Residential Purchase and Sale
           Agreements is arbitrary and capricious because it does not
           advance the goals that BPA states underlie this extended
           term and can be detrimental to the customers of investor-
           owned utilities. .............................................................................1

    II.     The OPUC adopts the arguments presented in the Joint
           Reply Brief of Petitioners Avista Corporation, PacifiCorp,
           Portland General Electric Company, and Puget Sound
           Energy, Inc, filed in the above-captioned case. ...............................7

CONCLUSION................................................................................................ 7

# TABLE OF AUTHORITIES

## Cases Cited

*Center for Auto Safety v. National Highway Traffic Safety Admin.*,
    793 F.2d 1322 (D.C.Cir. 1986) ...............................................................5

*Center for Biological Diversity v. National Highway Traffic Safety Admin.*,
    538 F.3d 1172 (9th Cir. 2008) ...............................................................5

## Constitutional & Statutory Provisions

16 U.S.C. § 839c(c)(1)......................................................................................5

## Other Authorities

*Power Sale to Alcoa Inc. Commencing December 22, 2009*...............................7

i

**REPLY BRIEF**

_____

**ARGUMENT**

I.     **The 20-year term of the Residential Purchase and Sale Agreements is arbitrary and capricious because it does not advance the goals that BPA states underlie this extended term and can be detrimental to the customers of investor-owned utilities.**

The Public Utility Commission of Oregon ("OPUC") challenges the Bonneville Power Administration's (BPA's) requirement that any utility wishing to participate in the Residential Exchange Program (REP) under the Northwest Electric Power Planning and Conservation Act (the NW Power Act) must enter into 20-year contracts (Residential Purchase and Sales Agreements (RPSAs)) that have limited termination and re-entry rights.[1]  This 20-year requirement is arbitrary and capricious because it does little to further the policies that BPA asserts underlie the requirement: stability and certainty.

In its answering brief, BPA explains that it requires utilities participating in the REP to enter into 20-year contracts "to assure that residential customers of IOUs receive a share of benefits of the Federal system over the long term, consistent with the law, which would parallel the certainty observed by the COUs."  (BPA Br. 69).  BPA also asserts that "[b]ecause the REP has a cost

_____

[1]     BPA has offered two RPSAs: one for the term 2009-2011 and one for the term 2011-2028.

impact to BPA's base rates, offering 20-year contracts with all its customer groups offers stability by clarifying, on a longer-term basis, the rights and obligations of BPA's customer classes with respect to the Federal hydroelectric system, and the potential cost and rate impacts that BPA must manage as a consequence." (BPA Br. 70). Contrary to BPA's assertions, the extended duration of the contracts, coupled with the fact a utility can only withdraw and re-enter the REP in one specific circumstance during the term of the contract, diminishes the likelihood that residential customers of investor-owned utilities will receive Federal system benefits over the long term, and also reduces certainty regarding potential cost and rate impacts that BPA must manage.

Under the terms of the RPSAs, a utility may "terminate" participation in the REP (a.k.a. terminate the RPSA) in only one circumstance, when a § 7(b)(3) supplemental charge causes the PF Exchange Rate to exceed the utility's average system cost (ASC). As BPA explains in its brief, utilities would likely terminate the RPSA in this instance to avoid buying BPA's higher-cost power and selling to BPA the utility's lower-cost power and thus, accumulating a debt to BPA. (BPA Br. 54).

In addition to the utility's contractual right to terminate participation in the REP for the single circumstance described above, a utility may "suspend" its participation in the REP for any reason. While a utility is entitled to re-enter

the REP after terminating the RPSA (at the beginning of the next rate period), a utility that "suspends" its participation is not allowed to re-enter the REP until after the expiration of the RPSAs in 2028.

In other words, under the RPSAs, a utility that suspends its participation in the REP in 2012 to avoid accumulating a debt to BPA is precluded from participating in the REP until 2029. This is true even if the utility's ASC were to rise above the PF Exchange Rate prior to the beginning of the next rate period, 2014, and remain above the PF Exchange Rate for the next 14 years. Given utilities' inability to re-enter the REP after suspending participation, the extended term of the contract fails to meet BPA's goal of "ensur[ing]" that customers of investor-owned utilities will receive the REP benefits to which they are entitled.

The extended term of the RPSAs also fails to promote BPA's second goal of certainty. While the RPSAs specify many of the details of the REP, the amount of benefits to which each participating utility is entitled is decided in a bi-annual rate case. Accordingly, the fact that the RPSAs last 20 years does not promote certainty with respect to the impact the REP may have on preference customers' rates. In fact, given the Hobson's Choice utilities may face if the REP becomes uneconomic, the duration of the contract actually promotes *un*certainty.

4

If a utility's ASC falls below the PF Exchange Rate for a reason other than addition of the §7(b)(3) supplemental rate charge, a utility must weigh the risk of accumulating a sizeable debt to BPA against the reality that suspending participation in the REP will mean that its customers cannot receive REP benefits until 2029, no matter what happens to the utility's ASC or the PF Exchange Rate. To make such a determination, the utility will have to estimate whether and when its ASC will rise and whether and when the PF Exchange Rate will fall. In other words, the utility's choice of whether to suspend participation in the REP for the duration of the contract term, or accumulate a debt to BPA, turns on the utility's best guesses about very complicated circumstances.

The goals of certainty and stability would be promoted by a shorter contract term. If the duration of the RPSAs is shorter, utilities will be better able to assess the risk of accumulating a debt to BPA against the risk associated with suspending participation in the REP for the duration of the contract. Meaning, a utility will likely have an easier time deciding whether it is in customers' best interests to risk accumulation of a debt to BPA during the duration of a relatively short contract term or withdraw from the program for that period. Because the risk associated with suspending participation in the REP will be far less if the RPSAs have a shorter term, a shorter term would

promote BPA's goals of certainty and stability. This is because BPA would be better able to predict whether utilities will choose to suspend participation in the REP or accumulate a debt to BPA, and thus better able to predict the REP's impact on base rates.

BPA has elevated non-statutory considerations over a statutory mandate in the NW Power Act, which is that "whenever a utility offers to sell power to BPA at the utility's average system cost, BPA "shall" purchase such power and "shall" offer, in exchange, to sell an equivalent amount of power to such utility for resale to the utility's residential users within the region. 16 U.S.C. § 839c(c)(1). Under BPA's prohibition against participating in the REP after "suspending" participation, a utility could be deprived of its statutory entitlement to exchange power in the REP for as long as 14 years. BPA's disregard of the statutory mandate is impermissible. *See e.g., Center for Biological Diversity v. National Highway Traffic Safety Admin.*, 538 F.3d 1172, 1206 (9th Cir. 2008), *quoting Center for Auto Safety v. National Highway Traffic Safety Admin.*, 793 F.2d 1322, 1340 (D.C.Cir. 1986)("[Agency] may consider consumer demand, but 'it would clearly be impermissible for [agency] to rely on consumer demand to such an extent that it ignored the overarching goal of fuel conservation.'").

6

In its answering brief, BPA asserts that the 20-year RPSAs are meant to assure investor-owned utilities receive a share of the Federal system over the long-term, which "parallel[s] the certainty observed by COUs." (BPA Br. 69). Notably, BPA does not repeat the reasoning used in its RPSA ROD, that the 20-year RPSAs are intended to parallel the contracts offered to the COUs and to the DSIs. This is because BPA entered into much shorter contracts with DSIs. *See e.g., Power Sale to Alcoa Inc. Commencing December 22, 2009;* (Administrator's Record of Decision, December 21, 2009) (Order specifying that BPA is entering into contract with DSI for initial period of 17-months and additional 5-year period if certain conditions are met). BPA's decision to enter into shorter-term contracts with the DSIs undercuts BPA's rationale that 20-year contracts promote goals that are more important than other competing considerations.

The OPUC does not suggest that BPA must allow each REP participant to dictate the duration of its RPSA. Instead, the OPUC asserts that it is arbitrary and capricious to only offer RPSAs with 20-year terms when this extended term does not promote the goals that BPA asserts underlie this requirement and when this extended term can lead to severe economic consequences for the customers of utilities participating in the REP.

**II.**   **The OPUC adopts the arguments presented in the Joint Reply Brief of Petitioners Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy, Inc, filed in the above-captioned case.**

Pursuant to Federal Rule of Appellate Procedure 28.1, the OPUC adopts by reference the arguments presented in the Joint Reply Brief of Petitioners Avista Corporation, PacifiCorp, Portland General Electric Company, and Puget Sound Energy filed in these consolidated cases.

### CONCLUSION

For the reasons discussed in the OPUC's opening and reply briefs, this Court should conclude that sections 11.11, 11.12, 11.2.1 and 11.2.2 of both the bridge RPSA and long-term RPSA are unlawful and that section 1 of the long-term RPSA (regarding the extended contract term) is arbitrary and capricious.

Respectfully submitted,

JOHN R. KROGER
Attorney General
JEROME LIDZ
Solicitor General


/s/  Stephanie S. Andrus
—————————————————————
STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorneys for Petitioner
Public Utility Commission of Oregon


SSA:mxg/1962467

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Petitioner's Brief is proportionately spaced, has a typeface of 14 points or more and contains 4,596 words.

DATED:  March 25, 2010

/s/Stephanie S. Andrus

STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorneys for Petitioner
Public Utility Commission of Oregon

SSA:mxg/1962467

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2010, I directed the Petitioner's Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

David Hill
Attorney at Law
Department of Energy
1000 Independence Avenue, S.W.
Washington, DC 20585

/s/ Stephanie S. Andrus
STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorney for Petitioner
Public Utility Commission of Oregon

SSA:mxg/1962467

JOHN R. KROGER
Attorney General of Oregon
JEROME LIDZ
Solicitor General
STEPHANIE S. ANDRUS
Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402

Counsel for Petitioner Public Utility Commission of Oregon

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| IDAHO PUBLIC UTILITY COMMISSION, *et al.*, | U.S.C.A. Nos. 08-74927, 08-74928, 08-74929, 08-74932, 08-74933, 08-74942, 08-74957 |
| Petitioners, | |
| BONNEVILLE POWER ADMINISTRATION, | STATEMENT OF RELATED CASES |
| Respondent. | |

Pursuant to Ninth Circuit Court Rule 28-2.6, the OPUC states the

following: The following cases pending in this Court are related to the

consolidated cases at issue here:

> *Association of Public Agency Customers, et al., v. BPA*, Nos. 08-74725, 08-74811, 08-74900, 08-75008, 08-75091, 08-75098, 08-75099, 08-75112, 08-75113, 08-75130, 08-75132, 08-75133, 08-75161, & 08-75165

The following cases pending in this Court are also related because they

involve challenges to FY2009 rates established by BPA during the WP-07S

proceeding at issue here:

*Avista Corp.* et al. *v. BPA*, Nos. 09–73160, 09–73201, 09–73225, 09–73228, 09–73230, 09–73247, 09–73249, 09–73251, 09–73252, 09–73254, 09–73264, 09–73269, 09–73271, 09–73274 & 09–73281

On December 14, 2009, this Court ordered that all three sets of cases be calendared before the same merits panel.

Respectfully submitted,

JOHN R. KROGER
Attorney General
JEROME LIDZ
Solicitor General

/s/ Stephanie S. Andrus
STEPHANIE S. ANDRUS
Senior Assistant Attorney General

Attorneys for Petitioner
Public Utility Commission of Oregon